## SMITH v. DAY et al.

### (Circuit Court, D. Oregon.    March 23, 1898.)

### No. 2,307.

1. NEGLIGENCE—CONTRACTORS FOR RIVER IMPROVEMENTS—BLASTING ON GOVERNMENT LANDS.

Contractors making rock excavations on government property for river improvements are to be considered, so far as regards their duty to avoid injuring third persons, as owners of the premises, and are not required to use extraordinary care, such as covering their blasts, but only ordinary care. Passengers on river steamboats, which are permitted to land near the place where the blasting is carried on, with the express understanding that the boat owner must assume all responsibility, are to be regarded as there by mere permission or sufferance, and at their own peril, if ordinary care is used.

2. SAME—ASSUMPTION OF RISKS.
> One who goes, voluntarily, in the prosecution of his own business, on public lands, where improvements are being made by contractors, knowing that blasting is going on there, assumes the risks incident to the prosecution of the work with ordinary care, though he is there by the sufferance or permission of the contractors.

This was an action at law by Henry Smith against J. G. & I. N. Day and the Dalles, Portland & Astoria Navigation Company to recover damages for personal injuries. The jury returned a verdict for defendants, and the plaintiff now moves for a new trial.

A. S. Bennett and G. W. Allen, for plaintiff.
John M. Gearin and Stott, Boise & Stout, for defendants.

BELLINGER, District Judge. This is an action for damages resulting from an injury received by the plaintiff under the following circumstances: The plaintiff was a passenger on board the navigation company's boat, from the Dalles to Portland. At the Cascade Locks the defendants J. G. & I. N. Day were engaged, as contractors for the government, in making rock excavations for the locks then in course of construction at that point. Their work was being carried on within what is known as the "Government Reserve," being lands reserved by the government for the purposes of the work under construction. A large force of men were being employed, and the practice was to fire off blasts at the noon hour, after the workmen had left their work for their dinners, and in the evening, after the time for quitting work. This blasting had been conducted regularly for a considerable period of time at this point, during the short season in which the stage of water would permit that kind of work. The plaintiff, being a passenger as aforesaid, upon arriving at the locks, got on the portage railway, and rode down to the lower wharf, being a point on the reserve near where the work of blasting was being done. He went along with a number of other passengers. Upon reaching the lower wharf, he went on board the boat of the navigation company at that point, where he remained for some time, during which blasts were being fired. When he got to the lower boat, he heard blasting, and understood that blasting was being done. He went upon the boat, and was occupied for some 15 minutes in playing a game of cards, after which he talked to the steward for a few minutes, and then sat down in the forward part of the boat, and, becoming sleepy, either went to sleep, or dozed off in a state of partial sleep. In this situation he was struck by a rock thrown by one of the blasts, which broke through the upper deck of the boat, striking him on the head or back of the neck, causing the injury complained of. The jury found for the defendants.

The grounds of the motion for a new trial are:

(1) Error of the court in instructing the jury as follows:

"In determining the question of negligence in the prosecution of the work of blasting by the defendants, you must take into consideration the nature of the work being done, the time within which it was to be completed, the place where it was to be done, and the necessity of firing blasts at certain hours of the day, in order that the work might be completed within the contract time."

(2) Error of the court in submitting to the jury the question of contributory negligence, the contention of plaintiff being that there was no evidence tending to prove such negligence.

(3) Error of the court in refusing to instruct the jury, as requested by plaintiff, that if there was an arrangement between the navigation company and the defendants, by which the former had permission to use the landing where the accident occurred, at its peril, this would not bind plaintiff.

The negligence complained of, and upon which plaintiff relied as the ground of his recovery, consists (1) in the failure of the defendants to cover their blasts before firing the same; (2) in their failure to give reasonable notice, or any notice, to the passengers that blasts were about to be fired; (3) in not delaying the firing of such blasts until such time as the boat had departed from the wharf, and was out of danger.

It is argued that the instruction that the jury might take into consideration the nature of the work being done, the time within which it was to be completed, the place where the work was being done, and the necessity of firing blasts at certain times of the day in order that the work might be done within the contract time, makes the case turn upon the question of the necessity the defendants were under of doing the work as it was being done in order to complete it as they had contracted to do; that a party has no more right to be careless or reckless of human life by a contract with the government than by a contract with an individual; that a party cannot relieve himself from his duty to adopt measures of safety and protection by accepting such conditions in his contract as are inconsistent with any measure of prudence necessary to the safety of third persons. The principle thus stated cannot be gainsaid. A party who owes a duty in that regard cannot excuse himself for a failure to exercise ordinary care and skill, whereby another has been injured, by urging the necessities of his own situation at the time. But the term "ordinary care" is a relative term, always dependent on relationship and circumstances. 16 Am. & Eng. Enc. Law, 398. The term "negligence" has different meanings in relation to different causes of action. In some cases it means a very slight absence of care and prudence; in others, the absence of reasonable care; and, again, such want of care as makes gross negligence. Railroad Co. v. Woodruff, 59 Am. Dec. 72. Care is, undoubtedly, a relative term, or, rather, conveys a relative idea as to the degree necessary to be observed under circumstances. Railroad Co. v. Ogier, 35 Pa. St. 60. Want of ordinary care means nothing more than the failure to use those precautions which a just regard to the persons and property of others demands should be used under the circumstances of the particular case. The Farmer v. McCraw, 26 Ala. 189. And it has accordingly been held that it is the duty of a railroad company to exercise more caution and a higher degree of care when running their cars through a village or city than in the open country. Beisiegel v. Railroad Co., 34 N. Y. 622. "Ordinary care" depends upon the performance of a duty which one of the parties owes to the other, and this duty "arises out of the various relationships of life and varies in obligation

under different circumstances. In one case the duty is high and imperative; in another it is of imperfect obligation. Thus, it may be dependent on a mere license to enter upon land or the bare obligation to avoid inflicting a willful injury upon a trespasser; while, upon the other hand, it may be a duty to care for the safety of a specially invited guest or of a passenger for hire." 16 Am. & Eng. Enc. Law, 412. "So, a licensee who enters on premises by permission only, without any enticement, allurement, or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon." Sweeny v. Railroad Co., 87 Am. Dec. 647. Where one who, without invitation and as a licensee, only crossed the lands of another, where he and others had often crossed, and fell into an unprotected pit, and was injured, held that the owner of the premises was not liable. Morgan v. Railroad Co., 19 Blatchf. 239, 7 Fed. 78.

This principle is applied in Eisenberg v. Railway Co., 33 Mo. App. 91, where it is held that mere licensees, in the use of a road across private property, in making use of the license, necessarily assume all patent and obvious risks. It is also applied in the case of Transit Co. v. Rourke, 10 Ill. App. 478. In the latter case there was an uncovered pit on defendant's land, from which the accident and consequent damages claimed resulted. The deceased was upon the defendant's land, without any invitation from the defendant. The facts, as stated in the opinion, appeared to be that many other persons "were in the habit of passing over said land, of their own motion, and for their own convenience," without objection on defendant's part; "but these facts," the court says, "at the utmost, only raise an implication of a license to the deceased to do the same thing, but gave him no right beyond that of a mere licensee." And in Railroad Co. v. Griffin, 100 Ind. 223, the court say:

"The owner of premises is under no legal duty to keep them free from pitfalls or obstructions for the accommodation of persons who go upon or over them merely for their own convenience or pleasure, even where this is done with his permission. In such case the licensee goes there at his own risk, and, as has often before been said, enjoys the risk with its concomitant perils."

In this case there was no invitation by the defendants to the plaintiff or to the navigation company to go upon the premises in question. The latter's passengers went upon these premises for their own convenience, and by the implied permission of defendants. Plaintiff contends that the premises were a highway; that the river has this character; and that it was the right of all persons to pass up and down at this point; and that the defendants were obliged, at whatever inconvenience to themselves, to adopt all necessary precautions for the safety

of plaintiff and his fellow passengers, even if in consequence thereof they became unable to comply with their contract in the completion of the improvement in which they were engaged. Such is the rule governing the enjoyment of property by one owner with reference to the rights of adjacent owners or of passengers on the highway. But it does not apply in the case of mere licensees on the property of another. And, for the purposes of this case, the defendants must be held to be for the time being the owners of the premises where the injury occurred. The right to use the highway is necessarily subordinate to the right to improve the highway for use. The public authority may tear up a street, remove a bridge, or obstruct a road, and to this end exclude all travel, for the purposes of an improvement. The defendants were placed by the government in the possession of the premises where this work was being done. The character of the work was necessarily hazardous. The testimony shows that passengers were allowed to pass over the premises for their own convenience, by permission or sufferance; the only permission that was given being that given to the navigation company, accompanied by the statement that the company must assume all risks.

The plaintiff had frequently made trips over this route before his injury. He testifies that he had gone "up and down there before," "several times a year." How long this work had been carried on does not appear. It appeared, however, that the work at that point was one of magnitude, and that it could only be prosecuted during the short season of extreme low water, beginning about November 1st, and ending early in January. Plaintiff says that, in passing there theretofore, he had never heard blasting. Nevertheless, he must have known, if not from observation, from common knowledge, that blasting was being done along the line of that work. It is common knowledge that this work, necessarily involving more or less blasting, had been going on for years. If plaintiff could, bv any possibility, have been ignorant of this, he was so under circumstances that have the consequences of knowledge; and, in passing over these premises, he assumed the risk incident to the work as it was being conducted. He was not a trespasser, and his case was submitted to the jury on the assumption that he was rightfully where he was; but, in determining the "care" required of defendants, it was left to the jury to determine the measure of defendants' obligation to the plaintiff by the circumstances of the case. It does not follow from the statement that plaintiff was rightfully at the place where he was injured; that an imperative duty was imposed upon defendants to look out for his safety, as would be the case if plaintiff had been upon his own premises or upon a public highway open to travel. He was rightfully there in the sense that he was there by sufferance, and was therefore not a trespasser, in which case defendants would only be liable for willful negligence. If plaintiff was rightfully there upon the implied consent of defendants, it was with the implied risk on his part of such dangers as were incident to the work defendants were engaged in, conducted in the manner usual, with the care ordinarily exercised under such circumstances.

The instruction complained of, by which the jury were allowed to take into consideration the magnitude of the work, etc., was with ref-

erence to the contention of plaintiff that defendants were in duty bound to cover their blasts, or to await the departure of the boat before firing them; and, since the jury was allowed to find negligence as to these matters, the instruction was upon a theory of the case favorable to plaintiff. But there is nothing in the case tending to support the contention that there was any obligation on the part of the defendants to adopt either of these precautions. This case differs widely from those cited in support of this motion, where the matter complained of constituted a nuisance, or otherwise involved a breach of duty arising out of circumstances which made that duty a high and imperative one. There was no testimony tending to show that blasts were ever covered except in cities or towns, or in proximity to buildings liable to injury therefrom; and it would be unreasonable to require the defendants, because of the permission granted by them to those who wished to travel by the river route for their own convenience or profit, to so involve themselves in unusual precautions as to make a compliance with their contract impossible or more difficult.

I am of the opinion that the court erred in submitting the matter to the jury at all. There was nothing to authorize a finding of duty on the part of defendants to forego their usual work in their usual method. The covering of blasts was not required by ordinary care. It would have been extraordinary care, and so extraordinary as to be impracticable. And so of the failure of defendants to delay their blasts until after the departure of the boat. It appears that the time when the boat would leave was uncertain. It sometimes happened that, arriving before 12 o'clock, she would not leave until after 2 o'clock, or until shortly before 3 o'clock. The defendants could not reasonably be expected to delay their work awaiting the uncertain movements of the company's boats. The navigation company's boat could, with small loss of time to herself and passengers, have remained down the river until these blasts were fired. It was usually about noon when she arrived at the locks, and she frequently arrived after that time, and probably after the firing was over. The rights of the boat and her passengers were, as we have seen, subordinate to those of the contractors. The boat never left for Portland until after 1 o'clock, and generally it was much later than that. If the down-river passengers did not care to take any risks from the blasts that were uniformly fired shortly after 12 o'clock, they could, with but slight if any inconvenience, have remained at the upper locks until after the blasts were fired. But, without this, the ordinary risks from this danger were assumed by them. They had no right to rely upon any such precautions as it is now contended defendants should have provided. There was no question of negligence as to the matters covered by the instruction complained of that the jury could properly consider, and the plaintiff cannot complain that the court submitted such question to them.

The plaintiff cites a number of cases in support of his motion, bearing upon the question under consideration, among them Beauchamp v. Mining Co., 50 Mich. 163, 15 N. W. 65, where it was left to the jury to find whether ordinary prudence and caution would have required the defendant to cover and protect the place from which blasts were to be fired, the case being one of injury from a mining blast. This was

assigned as error, upon the ground that such a requirement would be so expensive that mining could not be carried on profitably, and was therefore impracticable. But the court said:

"In none of these cases where negligence is alleged and proved could the answer be admitted that the profits of the business carried on would not justify the extra expense. It is not the matter of profit or loss that determines or enters into the question of care or negligence, but rather that of danger to the public or third persons. Were it otherwise, an insolvent corporation would be comparatively safe, and an almost worthless mine might be carried on with an utter disregard of the rights and safety of others. If mining at a particular place cannot be profitably carried on, and at the same time the rights of third parties be respected and protected, then it must be carried on at a loss or abandoned."

It will be noticed that the question is treated by the court as an attempt to excuse proved negligence on the ground of expense; but the real question was whether a failure to cover the blasts, under the circumstances of the case, was negligence or tended to prove it. The case was one where the defendant company and another company, the Stephenson Company, worked adjacent mines. Each company gave to its employés permission to erect and occupy dwellings on their respective lands. The plaintiff, who was working for the Stephenson Company, had erected a dwelling upon its lands. With its permission, a store was also maintained on its lands. The plaintiff's son was injured by a blast from the defendant company's mine, while going from the store to his home. The case was therefore one where an injury results to a third person, on his own premises, from the work of an adjoining owner; and it belongs in the category with those cases which hold that the act of throwing missiles on the land of another is clearly wrongful, and imposes upon the party the obligation of seeing to it that no injury results therefrom.

The case of St. Peter v. Denison, 58 N. Y. 416, relied upon by plaintiff, is a case where a contractor of the state, in blasting for a canal, threw frozen dirt upon the land of plaintiff, where the latter was in the enjoyment of his property, and without warning of the blast, whereby plaintiff was injured. It was held that the throwing of débris by blasting in this way was an intrusion upon plaintiff's land, and that this is equally as wrongful as a permanent appropriation of the land would be, and that, having no right, it is no matter whether or no defendant made his invasion without negligence; that the defendant was bound either to adopt such precautions as would prevent such missiles from reaching the place where the plaintiff then was, or to give him personal and timely notice of the setting off of such blast; that "the plaintiff was of lawful right where he was, and had the right to assume, until personal notice or knowledge of the contrary, that others would not unlawfully intrude upon him." The case cited is not one of negligence, but of unlawful intrusion upon the premises of another. The duty resting upon the defendant to guard against injury from his wrongful intrusion was absolute. It was not a case of reasonable care in blasting or in giving notice. The act of throwing missiles upon the land of the adjacent owner was in itself wrongful, and it imposed upon the defendant the obligation of seeing to it that no injury resulted therefrom. Reasonable precaution as to notice, or reasonable

care in that respect, was not enough. Timely and personal notice is required,—such notice as would make the plaintiff's conduct thereafter, in exposing himself to the threatened danger, reckless or willful. The case involves an entirely different principle from that applicable in this case, where the plaintiff, for his own convenience, by the sufferance or implied license of defendants, goes upon premises where, and at a time when, blasting is being regularly done, and who, if the circumstances do not imply knowledge beforehand, at least knew some time before he was injured that blasts were being fired.

Another case relied upon in support of this motion is that of Wright v. Compton, 53 Ind. 337. But that case, like the one just considered, did not involve any question of negligence. It was a case of blasting near a public highway, whereby a person traveling on the highway was injured. The court says:

"The question involved is not one of negligence on the part of the defendants. The act charged against them is in itself unlawful; not the act of blasting and quarrying rock, but the act of casting fragments of rock upon the plaintiff, to his injury."

The court lays down the rule that "the public travel must not be endangered to accommodate the private rights of an individual." The question is considered in this case as one involving an unlawful use of the defendants' property, to the injury of third persons in the enjoyment of their property. It is put upon the grounds of the decision in St. Peter v. Denison, that what is complained of is a nuisance,—an unlawful intrusion upon the property of others. And so the court, quoting from Hay v. Cohoes Co., 2 N. Y. 159, says:

"A man may prosecute such business as he chooses upon his premises, but he cannot erect a nuisance to the annoyance of the adjoining proprietor, even for the purpose of a lawful trade. He may excavate a canal, but he cannot cast the dirt or stones upon the land of his neighbor, either by human agency or the force of gunpowder. If he cannot construct the work without the adoption of such means, he must abandon that mode of using his property, or be held responsible for all the damages resulting therefrom. He will not be permitted to accomplish a legal object in an unlawful manner."

And the conclusion is reached that:

"If the defendants cannot work their stone quarry without endangering the safety of travelers on the highway, they must abandon it, or answer in damages for the injuries thus done."

So, too, of the case of Colton v. Onderdonk, 69 Cal. 156, 10 Pac. 395, also cited in support of the motion. In that case the owner of a lot situated in a large city, contiguous to the dwelling of another, blasted out rocks on his lot, to the injury of his neighbor. It was held that such a use of property is unreasonable, unusual, and unnatural, and no care or skill exercised in the use will excuse the owner from liability for the resulting damage.

In all these cases the obligation to make compensation is an absolute one. The law declares that one man shall not improve his own property by the employment of dangerous agencies, to the injury of his neighbor; and, whether he exercises the utmost care, the result is the same. Admitting that the same rule applies where the government is a party, yet it cannot be invoked when the injured party

voluntarily, in the prosecution of his own business, goes upon the premises where the improvement is being made, although he has permission to do so. Such person cannot say: "I am here by your permission, and with knowledge of the work you are prosecuting, and you must see to it that I am not injured, even if it becomes necessary to abandon the improvement you are making." Such an application of the rule of these cases would be unreasonable. The plaintiff and his fellow passengers went upon the premises where the blasting was being done with their eyes open. Their right there, whether it was a right by sufferance or license, implied or otherwise, was subordinate to the right of the defendants to prosecute the work in which they were engaged. These passengers assumed all risks necessarily incident to such work prosecuted with skill and reasonable care,—such care as is usually employed under like circumstances. They had a right to expect, and are presumed to have relied upon, this degree of care; but they had no right to expect, and are not presumed to have expected, that the manner of carrying on this work would be changed, and precautions, unheard of under the circumstances, adopted, or that the work would be delayed or possibly abandoned because of the indulgence granted to them. It follows that the refusal of the court to instruct the jury that the permission of defendants to the navigation company to use the landing at its peril would not be binding upon passengers on the boats of the company was not erroneous. The instructions given were inconsistent with the conclusion that any peril assumed by the company involved the plaintiff. It was fully explained to the jury that defendants were bound to exercise ordinary care under the circumstances. These circumstances were enumerated, and did not include that of risk impliedly assumed by the navigation company. I am of the opinion that the plaintiff did assume all risk attendant upon the work, if not as it was usually conducted, at least such risk as was necessary to the work conducted with ordinary care, as determined by the circumstances which surrounded it. When the jury are instructed to this effect, there is no presumption that they may have found that defendants were not liable upon the ground of an understanding with the navigation company that it acted at its peril.

It is contended that the jury should not have been permitted to consider whether there was contributory negligence on plaintiff's part; that there was nothing tending to prove such negligence. I am of the opinion that there was such testimony in the case. From what has already been said, enough appears to authorize a finding that plaintiff knew, from previous acquaintance, the nature of the work done at the locks and the risks attending it; that he knew that blasting was being done there, and the manner of such blasting; and that he knew that the boat did not leave the wharf until after such blasting at the noon hour. But, without this, it appears that plaintiff was warned of the blasting by the noise of the blasts, and by information which he had. He testifies that, when he got to the boat "at the time of the hubbub of the people getting off the boat, there was blasting at that time," so he "understood"; that he "heard some noise," and went in and sat down; that then, after the passengers going up stream

had got off the boat, he sat down with others, and played a game of cards, "for about fifteen minutes." Then he sat down, and talked to the steward for a few minutes, after which he succumbed to the rocking motion of the boat, and dozed, when he was struck and injured. On cross-examination plaintiff says that as soon as he got on the boat, and after he went upstairs, he heard some noise like blasting, and he "thought they were blasting," and that thereafter he played a game of cards. So, according to his testimony, he "understood" they were blasting at the time, and he heard some noise like blasting, and thought they were blasting, and thereafter he played cards for some 15 minutes, and followed that by talking with the steward "for a few minutes," after which he dozed in his seat for a time, the length of which he is unable to give. He was therefore fully warned of the blasting, and his instinct, if not his previous experience, should have enabled him to know there was danger. His conduct warrants the inference that he had become so accustomed to blasting, from previous journeys down the river, that it had ceased to excite any interest or concern in him. Between the time when he heard the noise of blasting and understood there was blasting, and his injury, there was ample time to have taken the utmost precautions for his own safety that any personal warning would have given him. He testifies that he had not on previous trips heard blasting, but does not testify that he was ignorant of the fact that blasting was being done regularly at that place and time; and, as already stated, there is enough to authorize the inference that he did know it, and that, with such knowledge, he was guilty of contributory negligence in going upon the boat, and, furthermore, that his subsequent conduct, after hearing the blasting, is enough to sustain a further finding of negligence on his part.

In addition to these considerations, I am of the opinion that there is nothing in the case tending to prove negligence on the part of defendants, contributing to the injury; that there is nothing to warrant the conclusion that the blasts should have been covered, or that defendants should have postponed their work of blasting until the navigation company's boat left on its trip; and that the question of a warning cry that blasts were to be fired is immaterial, since the plaintiff was otherwise warned, and had knowledge. The feeling of security which his conduct manifests was certainly not due to lack of notice, but appears to have been due to his indifference to what was taking place. The motion for a new trial is denied.