SMITH v. DAY et al.

(Circuit Court, D. Oregon. April 19, 1905.)

No. 2,307.

1. APPEAL—DECISION—RETRIAL—ADDITIONAL EVIDENCE—EFFECT.

Plaintiff, a passenger on a steamer lying in a river, was injured by a rock thrown out by a blast on shore. In an action for such injuries, the Circuit Court of Appeals held that evidence showing that defendants gave no notice to the boat passengers that a blast was about to be fired was sufficient evidence of negligence to justify submitting the case to the jury. Held, that additional evidence introduced on a subsequent trial after re-

versal that the blasts fired were not in a series, but were continuous, with short intervals of time between them, so that it was practically impossible that there should be separate notices of the firing of each blast, did not so change the rights of the parties as to deprive the former decision on appeal of its effect as the law of the case.

**2. SAME—INSTRUCTIONS.**

Where, in an action for injuries to a passenger on a boat by being struck by a rock thrown from a blast on shore, there was evidence that plaintiff had knowledge of the blasting operations before his injury, but the court, on a prior appeal, held that it was a question for the jury whether defendants engaged in such operations were guilty of negligence in failing to give notice to plaintiff of the blasting, an instruction, on a retrial of the case, that it was defendants' duty to exercise reasonable care to avoid injuring persons situated as plaintiff was, and to exercise reasonable care in giving notice to plaintiff that blasts were about to be fired, was not erroneous because it implied that defendants were required to send some one on board the boat to give notice to plaintiff in person, and for that purpose to wake him if he was asleep.

**3. SAME—DAMAGES—EXCESSIVENESS.**

Plaintiff was somewhat injured, through defendants' negligence, by being struck by rock thrown from a blast. He claimed injury to his right ear, but on the trial had little difficulty in hearing questions put to him as a witness; and, though he was made cross-eyed from the effects of the accident, his vision, for practical purposes, was unimpaired. It appeared that plaintiff's ability to follow his occupation and his earning capacity were not materially diminished. *Held*, that a verdict for $10,000 was excessive, and should be reduced to $3,000.

See 117 Fed. 956.

A. S. Bennett and G. W. Allen, for plaintiff.

Dolph, Mallory, Simon & Gearin, for defendants.

BELLINGER, District Judge. The facts in this case are set out in the opinion of this court upon the motion for a new trial in 86 Fed. 62, and in the opinions on appeal, 100 Fed. 244, 40 C. C. A. 366, 49 L. R. A. 108; 128 Fed. 561, 63 C. C. A. 189. Upon the last trial the jury returned a verdict in favor of plaintiff for $10,-000. The defendants move to set this verdict aside and for a new trial upon the ground that the verdict is excessive and appears to have been given under the influence of passion or prejudice, and upon the further grounds that the court erred in its instructions to the jury, and .that the evidence is insufficient to sustain the verdict.

The plaintiff's right to recover is based upon the alleged negligence of the defendants in failing to give plaintiff notice, before the accident from which the injury complained of resulted, that blasts were about to be fired. Prior to the decision by the Circuit Court of Appeals in the second appeal (128 Fed. 561, 63 C. C. A. 189), I was of the opinion that the plaintiff's admissions, in his testimony, of knowledge that there was blasting going on immediately prior to the accident, were sufficiently explicit to take the question of notice out of the category of disputed facts, and furthermore that, inasmuch as the plaintiff was at the time of the accident in the cabin, where all those traveling on the boat resorted for safety, he must be presumed to have been in as safe a place as he could get, with the exercise of reasonable care and with knowledge of what

was going on, and that therefore the question of notice was not material.

The appellate court—Judge Gilbert dissenting—reversed the judgment. That court holds that the question of notice, notwithstanding plaintiff's admissions of knowledge, is a question for the jury. The opinion, which is brief, states the conclusion of the majority of the court as follows:

"It is conceivable that reasonable men might say that in the prosecution of such work, under the circumstances disclosed by the record, some notice should be given of each separate and distinct blast fired in the immediate vicinity of people liable to be injured thereby."

The further ground upon which this court based its decision, namely, that the plaintiff was at the time of the accident in as safe a place as he could get in the exercise of reasonable care, under the circumstances, is not referred to in the opinion.

Upon the last trial the defendants introduced testimony to the effect that the blasts fired were not in series, but were continuous, with short intervals of time between them, so that it was practically impossible that there should be separate notices of the firing of each blast. And this testimony being uncontradicted, the defendants contend that the case is taken out of the rule laid down by the appellate court. My conclusion is otherwise. In my opinion, the case is in no way altered by this new testimony. All of the testimony on the former trials relating to this particular matter was to the effect that the blasts were fired in regular and close succession until completed. There was no contradiction and no dispute between the parties as to that. The plaintiff did not contend at any time that notice should have been given of each blast, nor did he so contend upon the trial recently had, notwithstanding the reversal of the former judgment upon the ground that the jury should have been permitted to so find. In none of the instructions requested by the plaintiff was the court asked to submit such a question to the jury, nor was such a thing thought of, so far as I am advised, nor was there anything in the case, independently of the continuous character of the blasting, to make the question of more than one notice material, since the plaintiff's position was not changed during the blasting. He remained from first to last in the cabin of the boat, where the passengers went to be out of danger.

On the last trial the court instructed the jury that, in the prosecution of the work upon which the defendants were engaged, it was their duty to exercise reasonable care "to avoid injuring persons situated as plaintiff was"; that it was required of them to exercise reasonable care in the matter of giving notice "to the plaintiff" that blasts were about to be fired; and in that connection the jury were told that they should consider all the circumstances of the case, including that of "the place where the plaintiff was on the boat." The defendants contend that the notice here described, having reference to the situation in which plaintiff was, and to the place he was in on the boat, might be construed by the jury to imply that defendants were required to send some person on board

the boat, who should give to the plaintiff in person the notice to which he was entitled, and who should wake him for that purpose if he was asleep. The instructions in question were given and the case submitted to the jury upon the law of the case as settled by the appellate court. While this question was not presented to that court in the precise form in which it is now presented, and was not in terms passed upon, yet it inheres in the case. As already suggested, the testimony bearing upon the particular matter was the same in the last trial as in the one that preceded it. In view of the opinion of the Court of Appeals upon the facts before it, I am not prepared to say that the notice required should not have been of the character suggested by the instructions as defendants interpret them. The plaintiff, in the trial before the last appeal, testified that at the time he went upon the boat there was blasting—so he understood; that he heard some noise, and thought they were blasting. It is not probable that he in fact heard blasting at this time, since there was no blasting then going on, and he was speaking with reference to the locality where he was. His statement that he "understood there was blasting at that time" can have no other interpretation than that he knew that the work being prosecuted there involved blasting at that time of the day. He may not remember or correctly state the reasons for his understanding. That is not material. His means of knowledge do not affect the conclusiveness of the admission made against his interest. After going upon the boat and playing a game of cards, he says that he heard some noise that sounded like blasting at a distance; that this noise "sounded very indistinct in there, because there was a cataract of water, and more or less noise going on, caused by the passengers and the unloading of freight." The fact that the blasting sounded like distant blasting was due—so he states—to the noises which he knew about and describes. The plaintiff says that the idea he had "was a vague idea that there was work going on on the outside—whether there was blasting there, or noise that sounded like it." He also says that he dozed off into a light sleep after hearing several blasts. These admissions of knowledge are independent of what he learned when first going on the boat. The use of the word "outside" to describe the location of the noise that sounded like blasting, and the work he supposed was going on, identifies his "idea" of what was going on with the actual facts of the case. There was no noise of distant blasting heard by any of the witnesses, and this blasting was heard by all the witnesses who have testified upon the subject. If it was not sufficient to answer the purpose of notice to the plaintiff, then no warning cry given on the outside would have sufficed, as further appears from the fact that Mosher and Young, witnesses for plaintiff, heard the warning to look out while they were on the bow of the boat. These uncontradicted facts show that plaintiff knew all that he could have learned from any warning cry or notice from without the boat about the fact that there was blasting. It does not appear, however, that he knew the extent of the danger to be apprehended from it. His attorney, examining him as a witness in his own behalf, asked this

question: "If you had been warned that there was blasting going on so close to that boat as to make it dangerous, to make danger of rocks coming down through the roof over your head, what, if anything, would you have done?" etc. To this the plaintiff answered that he "supposed" he would have gone down on the lower deck, if anybody had said anything about it, but there was nobody there but the steward and a few passengers, and "the steward didn't say anything about it." "If the lower deck hadn't been there, and it had been necessary to go off a long distance from the blasting—leave the boat and go off a long distance from the blasting to make yourself safe—what, if anything, would you have done if you had known or been warned that there was any danger there; any blasting there that would have been likely to endanger your life?" With the answer that was wanted thus clearly indicated, the plaintiff answered: "I would have went off, I suppose, if they had made it clear my life was in danger. I think a man naturally would go any place." Upon the second trial, and before there had been any suggestion that the plaintiff might have found a place safer than the boat's cabin by going ashore or to the lower deck, one of plaintiff's attorneys, in his opening argument to the jury, anticipating the defense of contributory negligence, said: "Where could he have gone if this alarm of fire had been heard by plaintiff, and this was not a place of safety? Where would he go, * * * where would he be, not to be guilty of negligence, except in the cabin of the boat?"

These facts show that the plaintiff believed himself to be exercising due care for his own safety in going into the cabin of the boat and remaining there, with knowledge of the blasting on the outside, and that he adhered to that belief in the earlier stages of the case; and I am of the opinion that, inasmuch as the other passengers acted as he did, he was justified in that belief, since ordinary care is such care as the great majority of men would exercise in like circumstances. The plaintiff's conduct in this respect was not affected by the question of separate notices of different blasts. If he did not know that there was to be a succession of blasts, nevertheless he remained during all the blasting in the place where he was when the first blast was fired. It is clear, therefore, that if the defendants failed in any duty that was imposed upon them, to the plaintiff's injury—and the fact that the case was remanded for another trial has the effect of a determination that the jury would have been warranted in so finding—it was in their failure to anticipate what happened, and give the plaintiff such a warning as would have enabled a man, in the exercise of ordinary care, "situated as the plaintiff was," to have avoided the injury complained of. Whether they should have advised the plaintiff to leave the cabin, although they may have had the opinion expressed by plaintiff's attorney that it would be negligence for him to do so, it is not my province to decide. At all events, there is a necessary implication from the judgment of the appellate court that the jury might find that the defendants were remiss in some way aside from the question of notice of each separate and distinct blast,

in the matter of the warning in question; and so the instructions, if given the interpretation which the defendants say the jury may have given them, did not go too far.

I am of the opinion that the verdict is so excessive that a new trial must be granted on that ground unless the plaintiff will consent to remit the larger part of the sum assessed. In the other verdict found for the plaintiff, the jury assessed his damages at $2,000. His physical condition is as good now as it was when that verdict was returned, if not better. He testifies that the hearing in his right ear has been rendered defective, but that his left ear is probably as good as it ever was. His hearing, as it appeared from his examination as a witness, was good. There is frequently much difficulty on the part of witnesses in this court whose hearing is normal, in hearing the questions put to them on the witness stand, because of the bad acoustics of the room and the noise from the street; but the plaintiff seemed to hear without difficulty, and answered without hesitation. His hearing seemed as good as the best. The injuries suffered have made him cross-eyed, but his vision is, for all practical purposes, as good as it ever was, and his capacity for following his usual occupation is not diminished. I do not regard the matter of his personal appearance as a serious damage to a man at plaintiff's age. There is no impairment of plaintiff's ability to follow his occupation; no diminution of his earning capacity, or of any of the faculties upon which his well-being depends. I am of the opinion that, under these circumstances, damages in excess of $3,000 would be excessive. If the plaintiff will consent to remit all above that sum, the motion for a new trial will be denied, and a judgment entered accordingly; otherwise the motion will be allowed.