SMITH v. DAY et al.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1900.)

No. 497.

1. NEGLIGENCE—ASSUMPTION OF RISK.

One going voluntarily, in the prosecution of his own business, on premises where blasting is being done by contractors, knowing that blasting is going on, assumes the risks incident to the prosecution of the work with ordinary care, though he is there by the sufferance or permission of the contractors.[1]

2. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff went as a passenger on a boat lying at a wharf at a distance of from 150 to 300 feet from a point where blasting was being done by defendants, knowing that such work was going on. Soon after he went to sleep on the boat, and in that condition was struck by a rock thrown by one of the blasts, which broke through the upper deck of the boat. *Held*, that the question of his contributory negligence was properly submitted to the jury.

3. SAME—DEFENSE.

A passenger on the boat of a navigation company, lying at a wharf on premises in possession of defendant contractors, engaged in blasting, is not prevented from recovering for injuries caused by the negligent prosecution of such work by an agreement between the latter and the navigation company that the company should use the wharf at its own peril.

In Error to the Circuit Court of the United States for the District of Oregon.

Action by Henry Smith against J. G. & I. N. Day for personal injuries. There was a judgment for defendants (86 Fed. 62), and plaintiff brings error. Reversed.

G. W. Allen and A. S. Bennett, for plaintiff in error.

John M. Gearin, for defendants in error

Before McKENNA, Circuit Justice, and ROSS and MORROW, Circuit Judges.

ROSS, Circuit Judge. At the time of the injury for which the plaintiff in error brought this action, the defendants J. G. & I. N. Day were engaged, as contractors for the United States, in making rock excavations for the locks then in course of construction at the point on the Columbia river known as the "Cascade Locks." Their work was being carried on within the boundaries of the tract of land that had been theretofore acquired by the government by condemnation proceedings for the purposes of the work then under construction. Across this tract congress had, by joint resolution, authorized the state of Oregon to construct, maintain, and operate a portage railroad, and to use in the construction of the same, and in the operation thereof, the government roads upon the land, provided that such occupation and use should not interfere with the government works at the Cascades, and should be

---

[1] As to assumption of risk incident to employment, see note to Railroad Co. v. Hennessey, 38 C. C. A. 314.

under such restrictions and regulations as the secretary of war should prescribe. This grant the state of Oregon exercised and enjoyed by building a portage railway, and operating the same, through its state railway commission, for the transfer, in part, of passengers from the boats plying on the river above and below the locks. The railroad so constructed had afterwards to be given up by the state railway commission, after which the commission was allowed by the United States engineer in charge of the government work, and by the contractors, Day, to use the tracks which were built by the government for use during the construction of the work, and which tracks were turned over to the defendants, Day, when they took charge of it. Upon the execution of the contract between the government and the defendants, Day, they were put in possession of the government property, and they had been engaged in the prosecution of the work for several years when the accident complained of occurred. They had a large force of men employed, and their practice was to fire off blasts at the noon hour, after the workmen had left their work for dinner, and in the evening, after the time arrived for stopping work for the day. The blasting at the point in question could only be done at the low stage of the water of the river, which continued only from the early part of November to the early part of January. At the time of the accident the plaintiff was a passenger of the Dalles, Portland & Astoria Navigation Company, en route from The Dalles to Portland. Upon arriving at the upper lock he went, with other passengers, by means of the portage railway, to the lower wharf on the government reserve, near which point the work of blasting was being done. Upon reaching the lower wharf he went on board the boat of the navigation company, which lay alongside. When he got to the boat he heard blasting, and understood that it was being carried on. He went upon the boat, and was occupied for about 15 minutes in playing a game of cards, after which he talked to the steward of the boat for a few minutes, and then sat down in the forward cabin and went to sleep. While sitting there in that condition he was struck by a rock thrown by one of the blasts, which broke through the upper deck of the boat, resulting in his serious injury. The negligence alleged against the defendants, Day, in the complaint is their failure to give notice or warning to the plaintiff and others that they were about to do the blasting that inflicted the injury, and were negligent in setting off the blast at the time they did, within such close proximity to the boat on which the plaintiff, with others, was a passenger. The blast that caused the injury was fired shortly after noon. The boat on which the plaintiff went as a passenger lay alongside of a floating wharf, and at a distance variously estimated by the witnesses at from 150 to 300 feet from the point where the blasting was being done. The boat sometimes arrived at the floating wharf before and sometimes after 12 o'clock, and was accustomed to lay there for periods ranging from 41 minutes to 2 hours and 51 minutes. While several witnesses on the part of the plaintiff, who were upon the boat at the time of the accident, testified that they heard no warning of the

blast given, there was testimony on the part of the defendants
tending to show that warning was given by crying the word "Fire,"
which could have been and was heard by those on the boat who
gave any attention to their surroundings; and the plaintiff himself
testified, among other things, as follows:

"That he came from The Dalles to the locks on the Regulator; that Mr.
Mosher and Mr. Young and Mr. Kelly and other persons were with him; that
when he got to Cascade Locks he got on the portage railway, and rode on
the train down to the lower wharf, and then got on from there onto the
Dalles City; that he went right along with the other passengers. Q. Well,
when you got down to the Dalles City, go on and tell the jury just what hap-
pened. A. There was about 25 or 30 passengers going up the stream, and
I was going down; and the time of the hubbub of the people getting off the
boat— There was blasting at that time, so I understood. I heard some noise,
and went in and sat down, and the people went up the river, and, after the
passengers going up stream had got off the boat, we sat down and played a
game of cards,—played a game of Pedro for about 15 minutes; and then I
went and sat down on the seat, and went to talking to the steward for a few
minutes, and then I sat down in this kind of a seat, and the boat was rocking.
It rocked me into a kind of dozing sleep, and the rock struck me on the head.
I never knew what struck me."

We agree with the learned judge of the court below where he said,
in ruling upon the plaintiff's motion for a new trial (86 Fed. 62), that:

"The plaintiff and his fellow passengers went upon the premises where the
blasting was being done with their eyes open. Their right there, whether it
was a right by sufferance or license, implied or otherwise, was subordinate
to the right of the defendants to prosecute the work in which they were en-
gaged. These passengers assumed all risks necessarily incident to such work
prosecuted with skill and reasonable care,—such care as is usually employed
under like circumstances. They had a right to expect, and are presumed to
have relied upon, this degree of care."

We also agree, contrary to the contention of the plaintiff in error,
that the facts and circumstances of the case were such as to make
it proper for the court below to submit to the jury the question
of contributory negligence on the part of the plaintiff; and, in the
main, we think the instructions given by the court below to the jury
were quite as favorable to the plaintiff as they should have been,
and in one respect perhaps too much so, namely, in submitting to
the jury the question as to whether the defendants were in duty
bound to cover their blasts, or to await the departure of the boat
before firing them. But there was one error committed in the trial,
for which we feel bound to reverse the judgment. Against the ob-
jection of the plaintiff, one of the defendants, Day, was permitted to
testify to an agreement had between the defendants and the naviga-
tion company, by which that company used the wharf at which the
plaintiff's injury occurred at its own peril; and the court below re-
fused to instruct the jury, as requested by the plaintiff, that, if there
was an arrangement between the navigation company and the de-
fendants by which the former was permitted to use the landing
where the accident occurred at its peril, this would not bind the
plaintiff. That the plaintiff's rights were entirely unaffected by any
contract or understanding between the defendants and the naviga-
tion company is very clear. Little v. Hackett, 116 U. S. 366, 6 Sup.
Ct. 361, 29 L. Ed. 652, and cases there cited. The refusal to give the

instruction requested by the plaintiff, in view of the admission, over the objection of the plaintiff, of the testimony on the part of the defendants in respect to the arrangement between the defendants and the navigation company, constituted, in our opinion, error which was not overcome by any other instruction given by the court. The presumption of error arising from the erroneous admission of that testimony on the part of the defendants is strengthened by the refusal of the court to give the instruction requested by the plaintiff to which reference has been made. For this error the judgment must be reversed, and the cause remanded to the court below for a new trial. It is so ordered.