[No. 15616.   Department Two.   March 22, 1920.]

JOHN MACALE, *an Infant, etc., Respondent*, v.
LESLIE S. LYNCH, *as Lynch Transfer &
Storage Company, Appellant*.[1]

MASTER AND SERVANT (2, 176)—RELATION—INJURY TO THIRD PERSONS—EMPLOYEES OF INDEPENDENT CONTRACTOR—EVIDENCE—QUESTION FOR JURY. Whether the driver of a truck belonging to defendant, a transfer company, was in the exclusive control and direction of a dealer in potatoes, so as to be his servant rather than the servant of the defendant, is a question for the jury, where the dealer had engaged the truck and driver for certain deliveries in which he accompanied the loads and was riding at the time of an accident to a third person, but giving no directions as to the operation or driving of the truck.

WITNESSES (11)—COMPETENCY—AGE AND MATURITY OF MIND. It is error to receive the testimony of a child six years of age, where it is apparent that lapse of time and many months of severe suffering had entirely erased from his mind the impressions of the facts at the time of the accident, and except as to matters frequently discussed with him, his answers showed complete lack of understanding.

[1]Reported in 188 Pac. 517.

MASTER AND SERVANT (173, 182-1)—INJURY TO THIRD PERSONS—
NEGLIGENCE—DRIVER'S FAILURE TO STOP TRUCK—QUESTION FOR JURY.
Where the driver of a truck, on discovering a child of tender years
riding on the tool box, elected to bring the truck to a gradual stop,
admonishing the child not to jump, it cannot be said that he acted
wantonly or wilfully or was negligent in not bringing it to a sudden
stop.

Appeal from a judgment of the superior court for
King county, Jurey, J., entered April 19, 1919, upon
the verdict of a jury rendered in favor of the plaintiff,
in an action for personal injuries sustained by a child
in a fall from a truck, after a trial on the merits. Re-
versed.

*J. Speed Smith, Henry Elliott, Jr.,* and *Byers &
Byers,* for appellant.

*Griffin & Griffin,* for respondent.

TOLMAN, J.—This is a personal injury action brought
by respondent, acting through a guardian *ad litem,* as
plaintiff. Appellant, who was the defendant below, is
engaged in the transfer business in the city of Seattle,
operating under the name of "Lynch Transfer & Stor-
age Co." At the time of the accident complained of,
a Mr. Barnes, a potato grower in Eastern Washington,
had, by agreement with appellant, engaged a motor
truck and driver from him to be used in the delivery of
potatoes from the car or warehouse to various retail
dealers in the city who had purchased from Barnes
under contracts requiring the delivery of the potatoes
at the places of business of the several purchasers.
Barnes agreed to pay appellant a certain sum per hour
for the services of the truck and driver, and the work
was carried on by Barnes meeting the truck and driver
at the appointed time at the car from which the po-
tatoes were being unloaded, or going to appellant's
warehouse and there waiting for the truck to come in,

and going thence with the truck and driver to the car. After Barnes and the driver had loaded the truck from the car or warehouse, Barnes would give the driver instructions as to the places of delivery, and both would proceed with the truck to make the deliveries with as little loss of time and by the most direct and effective route that the knowledge of locations possessed by either would permit. Barnes did not operate the truck, nor give directions as to the speed, such matters being left entirely to the driver; and, except to see that it reached the places where delivery was to be made as expeditiously as might be, assumed no control over it.

On January 26, 1918, while so engaged, and after completing the delivery of potatoes from the truck to a retail merchant in West Seattle, Barnes returned to the truck ahead of the driver, and found respondent, an infant not then six years of age, on the running board of the truck. In response to an inquiry by Barnes, respondent announced his intention or desire to take a ride. Mr. Barnes said, "No you can't, Sonny," or words to that effect, and picked the child up and set him off in the street. Barnes then mounted the truck to his usual place on the right of the driver, and was followed by the driver, Nolan, who immediately put the truck in motion, and they proceeded on their route. After the truck started, or as it started, respondent again climbed on, and took a position upon the tool box fixed to the running board on the left hand side of the truck, immediately to the left of and below the driver's seat. Barnes saw the boy on the truck shortly after it started, but said nothing to the driver. When they had gone a block or less, the driver saw respondent, and nudging Barnes, said: "Look what we have with us." According to Mr. Barnes' testimony, the truck had been running at about ten miles per hour immediately before the driver saw re-

spondent, but was slowing down at the time the driver spoke the words just quoted. That almost immediately thereafter, the expression of the driver's face changed, and he called out: "Little boy, don't jump," reached for the emergency brake, but before the truck could be brought to a stop, respondent had jumped or fallen from the truck and was run over and crushed by its hind wheels, the point at which the truck stopped after the accident occurred being beyond the point where the driver first saw respondent on the truck, as expressed by the witness, "may have been a third of a block, possibly." In the absence of any testimony from the driver, who could not be located at the time of the trial, and as respondent did not attempt to testify as to anything done by the driver in the operation of the truck, we have only the testimony of Mr. Barnes as to what was done towards bringing the truck to a stop after the driver knew of respondent's presence on the truck, and in addition to what we have already indicated, Barnes testified:

"I don't think that Nolan intended to carry the kid clear away, as the boy testified; but I don't believe Nolan had shut his power off; I know he had not; I don't think he stopped the truck as soon as it should have been stopped. . . . After he nudged me, I don't believe he was stopping the truck as fast as he could have stopped it. I do believe he intended to stop soon; I believe he was slowing down for that purpose, but I don't think he was afraid, at the time he nudged me, that the boy was going to jump; I don't think that occurred to either him or me, until the boy had already started to slide off. . . . I think he was slowing down, but I don't think he was slowing down as fast as he could slow down safely; I want to be clear on it."

The case was tried to a jury, which rendered a verdict in favor of respondent in the sum of ten thousand

dollars, upon which a judgment was entered, and from which the appellant now appeals.

The first contention is that the evidence shows that the driver, Nolan, was not the servant of appellant at the time the accident occurred, but was the servant of Barnes and engaged in his business. It is, of course, well settled law that one who is in the general employ and pay of one person may be loaned, or hired, by his employer to another, and when he undertakes to do the work of the other he becomes the servant of such other, to perform the particular transaction. *Standard Oil Co. v. Anderson,* 121 U. S. 480; *Olsen v. Veness,* 105 Wash. 599, 178 Pac. 822. The controlling facts in these cases, and in all others which support the rule, is that the servant must have been in the exclusive control of the one to whom he is loaned, and if so such servant becomes, *pro hac vice,* the servant of him to whom the exclusive control so passes, and not otherwise. In the case at bar, the evidence fails to establish that the driver, Nolan, was, at the time of the accident, in the exclusive control and direction of Barnes with that clearness and certainty necessary to enable us to say, as a matter of law, that he was then the servant of Barnes and not the servant of appellant. The facts, as we gather them from the record, are such as to warrant the jury in finding that the driver was appellant's servant. *Driscoll v. Towle,* 181 Mass. 416, 63 N. E. 922; *Kellogg v. Church Charity Foundation of Long Island,* 203 N. Y. 191, 96 N. E. 406, Ann. Cas. 1913A 883, 38 L. R. A. (N. S.) 481; *Little v. Hackett,* 116 U. S. 366; *Boe v. Hodgson Graham Co.,* 103 Wash. 669, 175 Pac. 310.

The respondent was not yet six years of age at the time the accident happened, and when the case was tried some fourteen months later, he was permitted to testify as to the facts surrounding the accident, over

the objection of the appellant. Our statute, Rem. Code, § 1213, provides:

"The following persons shall not be competent to testify:

"2. Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly."

This unfortunate child, the victim of a most serious accident, whose escape from death was little short of miraculous, had spent many months in a hospital, suffered almost beyond his capacity to endure, and had constantly submitted to treatment, skillfully administered it is true, but most painful, and during the months intervening between the time of the accident and the trial had often discussed the cause of his injuries with the members of his family, his nurse, and his attorney; and on the trial, when lead by his attorney, gave some testimony which appears to be clear and direct, but at every point where he departed from the principal issue, whether on direct, cross, or re-direct examination, his answers show a complete lack of understanding. After having read and re-read his testimony, we are convinced that, if capable of receiving a just impression of the facts at the time of the accident, the lapse of time and his sufferings had entirely erased those impressions from his mind before the case was tried, and that, at the time of the trial, he was not capable of relating truly the facts which occurred at and preceding the time his injuries were received. The trial court therefore improperly admitted his testimony.

Without the testimony of respondent there is nothing in the record which tends to show that the driver, Nolan, wilfully and wantonly caused the injuries complained of; or, if he owed that duty, in view of respond-

15—110 WASH.

ent's tender age, that he did not exercise ordinary care. Had the driver, upon the discovery of respondent's presence upon the truck, at once thrown on the brake and brought the truck to a sudden stop, that act would have been complained of as causing the injury; anything less than a quick and complete stop would form the basis of a charge, as here, that such failure was negligence; and because the driver elected to bring the truck to an easy and gradual stop, having no reason to anticipate that the child would jump, it is now charged that he did not stop as soon as he could or should. If this argument is to prevail, it is apparent that the mere fact of the injury would be sufficient to establish appellant's liability without reference to the acts of the driver, except that he did not prevent the injury; in other words, appellant would be an insurer against injury. Such is not the law. We think that the testimony of Barnes fails to show that the driver acted other than prudently in electing to make a gradual stop, and reasonable minds should not differ in so deciding.

In the absence of any competent or admissible testimony that the driver acted wilfully, wantonly, or even without ordinary care, the trial court should have granted some one of the motions directed to that point on appellant's behalf.

The judgment is reversed with directions to dismiss the action.

HOLCOMB, C. J., BRIDGES, FULLERTON, and MOUNT, JJ., concur.