[No. 28112. Department Two. February 17, 1941.]

JAMES CLARKE, *Respondent*, v. BOHEMIAN BREWERIES, INC., *Appellant*.[1]

[1]Reported in 110 P. (2d) 197.

*Witherspoon, Witherspoon & Kelley (William G. Ennis, of counsel)*, for appellant.

*Clyde H. Belknap* and *Tustin & Chandler*, for respondent.

BEALS, J.—James Clarke, the plaintiff in this action, was an experienced automobile body and fender repairman. He had also worked in and around a service station, and had also for some time operated a garage of his own. During the month of March, 1939, plaintiff and one Clarence Glass formed a partnership for the purpose of engaging in the business of repairing and painting automobile bodies and fenders. Mr. Glass had had considerable experience in working with automobiles, most of his time, however, having been devoted to painting them.

Defendant, Bohemian Breweries, Inc., has for a long time been engaged in the brewery business, also in Spokane. One L. W. Warner, of Yakima, was employed by defendant as an independent hauler in the delivery of its beer. He owned a Kenworth semi-trailer, 1931 model, and suggested to defendant that a sign which had been painted on his truck, referring to a brand of beer brewed by another than defendant, should be changed; and defendant agreed to pay for the changing of the sign, which involved a considerable paint job on the truck.

About two months after the formation of the partnership between plaintiff and Glass, the firm orally contracted with the defendant to paint several of its trucks. The partnership was to take the trucks at defendant's place of business and return them thereto after the completion of the paint job. The work was to be performed at the partnership's establishment, at an agreed price for each truck. In making the deal, Mr. Glass represented the partnership, and Mr. R. B. Muzatko represented the defendant. Mr. Glass submitted a written proposition, which was accepted by defendant, and which reads as follows:

"The undersigned hereby agrees to paint three (3) trucks for the Bohemian Breweries, Inc., for Twenty-five Dollars ($25.00) per truck.

"The undersigned further agrees that he will paint these trucks as directed and will complete the paint job taking not more than two (2) days per truck, and further agrees to do a first class job which shall be acceptable to the Bohemian Breweries, Inc.

"(Signed) C. GLASS

"Dated at Spokane, Washington, this 11th day of May, 1939."

It was also agreed between the parties that the partnership would take possession of its trucks at

defendant's plant, and return them after completion of the job.

At the time the arrangement was made, Muzatko informed Glass that at some later date there would be work to do on the Kenworth truck, which Glass knew belonged to Warner. The work on two of the three trucks referred to in the agreement had been completed according to plan, and the third truck was being painted, when Glass was informed that the Kenworth truck was in Spokane, ready for the painting which had theretofore been discussed. Glass called at defendant's place of business, estimated the cost of the paint job, and told Mr. Muzatko that the work desired would cost ninety-five dollars, whereupon Mr. Muzatko said, "All right, paint it," it being understood that the work on the third truck belonging to defendant, which was then being done, would be interrupted so that the work on the Kenworth truck could be completed speedily, and the truck made ready to resume operations as soon as possible.

At this time, the Kenworth truck was under the control of one Kelly, a driver employed by Mr. Warner. The price agreed upon for the paint job was to cover all labor and material. Glass then interviewed Kelly, informing him that, before the Kenworth truck could be painted, it would have to be steam cleaned, this operation not having been referred to in the conversation with Muzatko. Kelly then drove the truck to a steam cleaning establishment selected by Glass, who was to pay for the cleaning out of his contract price of ninety-five dollars. After Kelly drove the truck to the cleaning establishment, he instructed Glass concerning the method of operating the truck, showing Glass the ignition switch and the choke.

Meanwhile, plaintiff went to the cleaning establishment to get the truck, but Glass drove the truck to the

partnership's place of business, followed by plaintiff in another car.

The Kenworth truck was very large, the top of the hood being between five and six feet from the floor level, the hood being approximately six feet in length, the entire length of the truck amounting to from thirty-eight to forty feet. The crank at the front of the hood was approximately thirty inches from the floor level. The spark, ignition switch, choke, and headlight switch were operated from the dashboard by buttons, which the operator pulled out or pushed in, as desired. To turn on the ignition, the operator would pull a button toward him, the spark being retarded or advanced by a similar operation. When the spark was advanced, the spark lever was pushed in to a position flush with the dashboard.

At the partnership's shop, the truck was placed in an appropriate position for painting, the work being completed by the following Monday. It then being desired to send the Kenworth truck to defendant's brewery, Glass endeavored to start the motor, but after trying for some time to start it, concluded that the battery was low. At this time, Glass knew that Kelly, the driver of the truck, had left for Yakima, and Glass, after his unsuccessful attempt to start the truck's motor, went to defendant's brewery, where he asked one of the foremen if anyone who could drive a Kenworth truck was available. The foreman then told an employee of defendant named Dickson to go with Glass and assist in moving the Kenworth truck.

In defendant's amended answer, referring to the matter of the sending of Dickson to assist Glass, defendant in its second affirmative defense alleged that it "loaned for this particular service Wiley C. Dickson, one of its servants." When Dickson and Glass arrived at the paint shop, they had some conversation about the me-

chanics of the truck and the location of the ignition switch. The truck being an old model, its appliances differed from most trucks in current use. Glass indicated the ignition switch, and Dickson endeavored to start the truck, but was unsuccessful. After some discussion, Glass mounted the cab, taking control of the different switches, while Dickson attempted, without success, to start the engine by cranking. From twenty to thirty minutes were consumed in making these attempts to start the truck.

During this time, plaintiff was standing nearby, but taking no part in the operation. The advisability of starting the truck by priming the carburetor was discussed, and Glass procured some gasoline in an open can, handing the same to Dickson, who poured some of the gas into the carburetor, then attempting, again unsuccessfully, to start the motor by cranking, Glass having again assumed his position in the cab. Plaintiff then picked up the open can containing the gasoline, and, in plain sight from the position occupied by Glass in the cab of the truck, undertook to pour more gas into the carburetor, the ignition switch being turned on and the spark advanced. Dickson was then at the end of the hood in a position to crank the truck, his vision being obscured by the hood of the truck.

Plaintiff testified that he told Dickson to delay any further effort to crank the truck while plaintiff primed the carburetor. Dickson testified that he did not hear this request or any other warning by plaintiff. Plaintiff testified that, when he told Dickson to delay action, Dickson did not answer him. Glass testified to the same effect. The ignition switch being turned on and the spark not having been retarded, and plaintiff pouring gas into the carburetor, when another attempt was made by Dickson to crank the truck, an explosion oc-

curred, with the result that plaintiff was severely burned.

Thereafter, plaintiff instituted this action for the purpose of recovering damages from defendant on account of his injuries. The case was tried to the court, resulting in a judgment in plaintiff's favor for $7,050, six thousand dollars of which represented general damages. From this judgment, defendant has appealed.

Error is assigned upon the sustaining of objections interposed by respondent to certain questions propounded to Mr. Glass on cross-examination; upon the rejection of certain evidence offered by appellant; upon the refusal of the court to sign certain findings of fact and conclusions of law proposed by appellant; upon the denial of appellant's motion for judgment in its favor notwithstanding the decision, or in the alternative for a new trial; and upon the entry of judgment in favor of respondent, appellant contending not only that respondent was entitled to no judgment at all, but that the amount awarded by the trial court was excessive.

The record shows some disputed questions of fact. Respondent and Glass testified that, after Dickson had primed the carburetor, and while Dickson was still standing at the head of the hood, he turned to respondent and said, "Give it another prime," to which respondent replied, "O. K., wait a minute," then took up the can containing the gasoline and poured some gas into the carburetor, whereupon Dickson reached down and turned the crank.

Dickson testified that he did not request respondent to do anything; that he did not see respondent prime the carburetor; and that, when the explosion occurred, he did not know that respondent was pouring gas into the carburetor. Dickson, of course, was appellant's employee, and was not under the control of either re-

spondent or Glass, unless he became in law a "loaned servant," as claimed by appellant.

The trial court found that Dickson requested respondent to prime the carburetor; that respondent told Dickson to wait while he poured the gasoline, and then proceeded to comply with Dickson's request; and that the priming operation required respondent to stand in such a position, paying close attention to the work in hand, that respondent, while pouring the gasoline, could not observe the actions of Dickson. The court also found that "Dickson negligently, contrary to plaintiff's expectations, and without any notice whatsoever to plaintiff, started cranking while plaintiff was still pouring, which negligent cranking resulted in and caused" the explosion. The court also found that Dickson, while endeavoring to start the truck, was in charge of the operation, and that neither respondent nor Glass were in any manner negligent in what they did. The court also found that the contract between appellant and the partnership for the painting of the Kenworth truck was a separate and independent contract, not connected with or affected by the terms of any other contract between the parties.

The evidence does not preponderate against the court's finding that Dickson requested respondent to prime the truck, and we accordingly accept that finding as correct.

If Dickson requested respondent to pour gasoline into the carburetor, and knew that respondent was proceeding to do so, Dickson owed to respondent the duty to use reasonable care to avoid injuring him.

■ Much of appellant's opening brief is devoted to the contract between appellant and the partnership. Mr. Muzatko drew the memorandum which Mr. Glass signed. This constitutes a mere offer to do the work. It bears no acceptance by appellant, nor does it provide

for the time of acceptance or payment, or for delivery of the trucks at the partnership's place of business, or for their return after the completion of the work. The trial court refused to admit some testimony offered by appellant concerning the contract between the parties for the painting of appellant's three trucks, and struck some evidence which had been admitted. In excluding most of this evidence, the trial court erred, as it was competent for appellant to show the complete history of the rather informal dealings between the parties and the course of conduct adopted by them in connection with the work performed by the partnership for appellant, tending to show the construction of the contract by the parties. The evidence was admissible; of course its weight is a different matter.

For the purposes of this opinion, we assume that the partnership was acting as an independent contractor, and was to pick up the Kenworth truck, as it did at the steam cleaners, drive the same to the paint shop, and drive it back after the completion of the paint job. This driving of the truck, however, would extend no further than to the operation of the truck in the ordinary manner. The evidence does not show that the partnership was anywise obligated to buy gas for the truck, or repair it if it would not function.

From the evidence, it appears probable that the battery was low, although not dead. Dickson testified that, after the explosion, he procured another battery, and that, upon its installation, the truck started without difficulty.

Appellant argues that Dickson was the loaned servant of respondent, and that, for this reason, appellant is not liable, even though respondent was injured as the result of Dickson's negligence. Appellant argues that it had no control over the Kenworth truck after it left appellant's plant; that it could not dictate how or

where the truck should be operated, nor how it should be stopped or started. It appears that, on the dashboard of this type of truck, the various levers for the operation thereof are not labeled, and that the use of these appliances is puzzling, save to one who is accustomed to use them. Kelly instructed Glass concerning the use of these buttons or levers, and evidently Glass had no difficulty in operating the truck from the cleaning establishment to the partnership's shop. Appellant, of course, did not own the truck, and had nothing whatever to do with it, save that appellant agreed to pay the partnership for painting it. When Glass was unable to start the truck, he went to appellant's plant, and requested assistance, whereupon an employee of appellant, occupying a position of some authority in the shipping department, directed Dickson, according to Glass, to "go down and bring back that truck." Dickson testified that he was instructed "to go with Mr. Glass and help him out."

The partnership's basic contract was to paint the truck. Under the contract, it was not liable for any repairs which the truck might need (unless caused by the partnership's negligence), nor was it obligated to purchase gas or rent a new battery for the truck. That the partnership was to take the truck to its own establishment, and return it to appellant's plant, was purely incidental to the paint job. Dickson, of course, was subject to the orders of appellant's officers and agents. His time and services were at appellant's disposal.

In the case of *Macale v. Lynch,* 110 Wash. 444, 188 Pac. 517, this court, in discussing the loaned servant doctrine, said:

"It is, of course, well settled law that one who is in the general employ and pay of one person may be loaned, or hired, by his employer to another, and when he undertakes to do the work of the other he becomes

the servant of such other, to perform the particular transaction. . . . The controlling facts in these cases, and in all others which support the rule, is that the servant must have been in the exclusive control of the one to whom he is loaned, and if so such servant becomes, *pro hac vice*, the servant of him to whom the exclusive control so passes, and not otherwise."

In the case of *Walter v. Everett School Dist. No. 24*, 195 Wash. 45, 79 P. (2d) 689, considering the same question, this court said:

"The mere fact of 'cooperation' does not produce this result. There is nothing in this record to show that Perry was 'loaned' to appellant to perform a service within the scope of appellant's activities, nor is there any showing that appellant had any right to control Perry. This jurisdiction recognizes the 'loaned servant rule,' but a loaned servant does not become the servant of the borrower unless the borrower has exclusive control over him for the period covered."

In the two cases cited, the facts differ from those present in the case at bar, but the general rule is stated.

In the case of *Carlson v. Sun-Maid Raisin Growers' Ass'n*, 121 Cal. App. 719, 9 P. (2d) 546, the district court of appeals of California considered a question somewhat similar to that now under discussion, the defendant in that case occupying the position of appellant here. The plaintiff was in the business of hauling, and contracted to move some machinery belonging to the defendant from one of its plants to another, the defendant agreeing that its employees should assist in loading and unloading. The plaintiff was injured, as the jury found, as the result of the negligence of one of the defendant's employees. On appeal, the defendant (then the appellant) contended that the work was done under the plaintiff's direction and control, and that the negligent employee was at the time a servant

of the plaintiff. The appellate court held against the appellant, saying, in the course of the opinion:

"In attacking the problem which is thus presented, it may be conceded at the outset that the evidence indicates that, during the work of unloading, appellant's employees were under the direction of respondent so far as the details of the work were concerned. It may also be conceded that the work then being performed was respondent's work. However, it was work in which appellant was so interested that it had agreed to furnish men to assist in its accomplishment. . . . 'The application of the doctrine of *respondeat superior* in any given case depends upon the power of control which the superior possesses . . . ' [quoted from *Billig v. Southern Pac. Co.*, 189 Cal. 477, 483, 209 P. 241.]"

The court went on to say that the loaned servant doctrine applies only where the power of control exists in the special master, having been for the time being resigned by the original master, a partial control by the special master not being sufficient.

If, as appellant argues, Glass recognized his absolute obligation to deliver the truck at appellant's plant, it would seem that he would have called a driver of his own selection. He knew that Kelly, the regular driver of the truck, was not available. If, when Glass went to the brewery for aid, he had there contacted Mr. Muzatko, and the latter had accompanied Glass to the shop and attempted to start the truck, being competent to do so, it would not seem reasonable to contend that he was acting as a loaned servant to the partnership.

The loaned servant doctrine is discussed at length in the case of *Central R. Co. v. De Busley*, 261 Fed. 561, a decision by the United States circuit court of appeals for the third circuit. The opinion cites the opinion of the supreme court of the United States, in the case

of *Standard Oil Co. v. Anderson,* 212 U. S. 215, 53 L. Ed. 480, 29 S. Ct. 252, in which the doctrine was considered at length. In the latter case, the supreme court stated that the work which was being done showed "cooperation rather than subordination," which expression we think is applicable to the situation in the case at bar. In the opinion of the circuit court, it is stated that the burden of establishing the new relation rested upon the defendant, who occupied the position of appellant here.

In the *De Busley* case, the court stated that the defendant failed to produce any evidence to sustain the burden which rested upon it. Of course, in the case at bar, appellant did introduce evidence concerning that point, but the rule that, in such a case, the burden of proof rests upon an employer in appellant's position to show the change of relationship and the loaning of its employee to another, is correctly stated.

It is clear that both parties had an interest in getting the truck to the brewery. The foreman acted for appellant in sending Dickson with Glass. Under our decisions, it must be held that Dickson was not a loaned servant, and that that doctrine has no application to the case at bar.

Upon the question of a joint interest in the accomplishment of a particular task, the case of *Geer v. Sound Transfer Co.,* 88 Wash. 1, 152 Pac. 691, is of interest.

Appellant's next assignments of error concern the matter of negligence on the part of Dickson, and contributory negligence on the part of Glass. Appellant argues that, if Glass was negligent, such negligence would be imputed to his partner, respondent; that respondent was guilty of contributory negligence; and that the weight of the evidence preponderates against the judgment of the trial court.

As to the first proposition, we assume without deciding that, if Glass was negligent, and this negligence proximately contributed to the accident, such negligence should in law be imputed to respondent.

From the evidence concerning the mechanical construction of the truck, it appears that the spark was advanced when the button which controls its action was pushed in flush with the dashboard, which was, of course, the button's normal position. Upon pulling the button out, the spark was retarded. We are of the opinion that, from the evidence, it cannot be held that Glass, by not pulling out this button, was guilty of negligence which proximately contributed to respondent's injury.

Appellant next contends that respondent himself was guilty of contributory negligence, and that, in using such an inflammable substance as gasoline, respondent failed to use that degree of care and vigilance which, under the circumstances, was required of him. It is true that the use of an open can containing gasoline, in priming an automobile, indicates a lack of that high degree of care which all persons should use in such an operation; but in acting as he did, under the circumstances disclosed by the record, respondent cannot be held guilty of contributory negligence.

As above stated, Dickson's status as appellant's employee continued at all times. While the evidence as to exactly what happened just prior to the explosion is in conflict, it does not preponderate against the finding of the trial court that Dickson's negligence in cranking the car while respondent was pouring gasoline into the carburetor proximately resulted in respondent's injury, and that neither respondent nor Glass was guilty of contributory negligence.

■ Appellant contends that the trial court should have signed the findings of fact which it presented, arguing that every one of its proposed findings was supported by the record. While these findings were, in the main, supported by some testimony, upon disputed questions of fact the trial court found in favor of respondent, and the evidence nowise preponderates against the findings which the trial court made.

■ Finally, appellant contends that the general damages allowed respondent as compensation for his injuries were excessive. The trial court found that respondent suffered first and second degree burns, involving both hands, his neck, and both front and back areas of his upper chest. His face and ears were also burned, and his lungs injured. As a result of his injury, his right eardrum was perforated, with a resulting infection, which has progressed, and will probably result in total deafness of that ear. The damages allowed were not excessive.

The judgment is affirmed.

BLAKE, MILLARD, SIMPSON, and JEFFERS, JJ., concur.