[No. 12-39989-1.    Division One.    December 15, 1969.]
Panel 2

CHARLES PICHLER, *Respondent,* v. PACIFIC MECHANICAL
CONSTRUCTORS *et al., Appellants.*

*Anderson, Hunter, Carlson & Duell* and *M. J. Carlson,* for appellants.

*Cooper & Lyderson* and *Leslie M. Cooper,* for respondent.

HOROWITZ, A. C. J.—Plaintiff sued the corporate defendant, Pacific Mechanical Constructors (PAMCO) and its employee, Leslie B. Hartley, for personal injuries caused by negligence. Plaintiff recovered judgment in the case tried to the court. Defendants appeal raising four issues.

First. Defendants contend that plaintiff is PAMCO's loaned servant in employment covered by the Industrial Insurance Act; that plaintiff is a fellow servant of Hartley whose claimed negligence caused the injury, and that under RCW 51.24.010 of the Industrial Insurance Act plaintiff is precluded from suing the defendants. The trial court held that Hartley was not plaintiff's fellow servant because the loaned servant doctrine did not apply. Defendants contend that the "evidence preponderated against the court's findings."

The contention that the loaned servant doctrine does not apply raises a factual question. If there is substantial evidence to support the court's findings on the matter, the findings control. *Nyman v. MacRae Bros. Constr. Co.,* 69 Wn.2d 285, 418 P.2d 253 (1966); *Davis v. Early Constr. Co.,* 63 Wn.2d 252, 386 P.2d 958 (1963); *Nepstad v. Lambert,* 235 Minn. 1, 50 N.W.2d 614 (1951). We may not substitute our

findings for those of the trial court. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

The court found that PAMCO was engaged in installing a large trunk sewer line, the installation requiring the hauling of pit run gravel from the stockpile of Renton Sand & Gravel Co. (RS&G) and movement of dirt to and from the sewer line to be dumped at points designated by PAMCO. PAMCO rented from RS&G on an hourly basis and used several RS&G trucks accompanied by RS&G drivers to haul and dump the material involved. Plaintiff was one of the RS&G drivers on the PAMCO job. The evidence showed that during the 2-month period the RS&G trucks were rented and used, that RS&G paid plaintiff's wages and the usual payroll, social security and federal withholding taxes on such wages. The court expressly found that RS&G had the right to hire and fire the drivers, including the plaintiff; that no employee of PAMCO had authority to give any order to RS&G employees and the plaintiff and, in fact, gave no orders as to the manner of operation of the truck to such employees and the plaintiff; that plaintiff at all times was the general employee of RS&G and at no time surrendered the exclusive control of the plaintiff to PAMCO; that plaintiff was not the loaned servant of PAMCO nor under its exclusive control on the date of the accident or at any time; that the truck of RS&G here involved was fueled, serviced, maintained and repaired each night by the employees of RS&G and that RS&G at its own expense repaired the truck which was damaged in the accident of November 12, 1962. Other findings consistent with the nonloaned servant status of the plaintiff were also made.

Defendant contends, however, that the evidence of the loaned servant status of the plaintiff is undisputed and that such undisputed evidence establishes the loaned servant status of the plaintiff as a matter of law, citing *inter alia, Olsen v. Veness,* 105 Wash. 599, 178 P. 822 (1919), discussed *infra,* and cases from this and other jurisdictions. Annot., 17 A.L.R.2d 1388 (1951).

■■ Before considering the evidence on which defendants rely, it is helpful to review the legal principles bearing upon whether or not the loaned servant relationship exists. The relationship of master and servant may exist between the borrowed servant and the borrowing master with respect to some acts and not as to others. *Nyman v. MacRae Bros. Constr. Co., supra; Davis v. Early Constr. Co., supra.* The determining consideration in the relationship in the case of master and servant is (1) whether or not there is control in fact or the right to control the servant's physical conduct in the performance of his duties. *Hollingbery v. Dunn,* 68 Wn.2d 75, 411 P.2d 431 (1966); *Cassidy v. Peters,* 50 Wn.2d 115; 309 P.2d 767 (1957); *James v. Ellis,* 44 Wn.2d 599, 269 P.2d 573 (1954); Restatement (Second) of Agency § 227 (1958). Such control or right of control in the case of the loaned servant must create a relationship of subordination between the borrowing master and the borrowed servant rather than a relationship of cooperation. *Clarke v. Bohemian Breweries, Inc.,* 7 Wn.2d 487, 110 P.2d 197 (1941). The fact that the borrowed servant obeys the requests of the borrowing employer as to the act involved does not necessarily cause him to be the servant of such borrowing employer. Restatement (Second) of Agency § 227, Comment d, p. 503 (1958). Such obedience indeed may be obedience to a noncoercive request of the borrowing employer or the request may be in the nature of information given to the borrowed servant in a cooperative effort to get the job done. *Doty v. Lacey,* 114 Cal. App. 2d 73, 249 P.2d 550 (1952); *Pennsylvania Smelting & Refining Co. v. Duffin,* 363 Pa. 564, 70 A.2d 270, 17 A.L.R.2d 1384 (1951). Whether the evidence and reasonable inferences therefrom show a relationship of subordination or cooperation is for the trier of fact. It is only if the evidence is undisputed that the nature of the relationship existing presents a question of law. Of particular significance in resolving the loaned servant issue are (1) the right to select or hire and fire the servant; (2) the right to direct how the servant shall perform his duties; (3) the value of the rented instrumentality

as bearing upon his continued relationship to the lending employer, and (4) the exclusive nature of the control or right to control. *Walter v. Everett School Dist., 24,* 195 Wash. 45, 79 P.2d 689 (1938); *Clarke v. Bohemian Breweries, Inc., supra; Macale v. Lynch,* 110 Wash. 444, 188 P. 517 (1920); *Nyman v. MacRae Bros. Constr. Co., supra; Davis v. Early Constr. Co., supra;* Restatement (Second) of Agency § 227 (1958).

■ The burden of proving the loaned servant relationship is upon the person contending that it exists. See *Clarke v. Bohemian Breweries, Inc., supra,* at 498-9.

Defendants contend that the court erred in entering its findings because the uncontradicted evidence shows that PAMCO had control and right of control of the plaintiff's physical conduct in the performance of his duties at the time of the claimed negligence and that such control and right of control was exclusive. Defendants particularly rely upon testimony by RS&G employees Sargeant and Lang concerning their duties with respect to PAMCO. Their detailed testimony was generally to the effect that they would obey PAMCO's requests as to where to haul and dump the materials being hauled; how to approach the dumpsite or at what rate of speed so to do; where to wait; how much of a load to dump; how to spread the load on a road, and testimony of similar tenor. Even as to the matter of obeying requests to slow down or speed up they testified, however, that they would do so "to a certain extent" or "within reasonable limits." When Lang, the RS&G driver, was asked if he would have done practically anything that PAMCO would have asked him to do in connection with the hauling and dumping operation "within reasonable limits" he answered in the affirmative. In a further effort to support their contention, defendants particularly call attention to the fact that during the 2-month period when the trucks and drivers were being rented to PAMCO there was no foreman of RS&G directing their operation concerning where to go, what to do or how to do it; and that PAMCO had the right to hire and fire the plaintiff. In support of the

latter contention, they point to Sargeant's testimony as follows:

Q Did anybody working for PAMCO have any authority to hire or fire Mr. Pichler?
A No, they didn't. Through me, then they could.
Q They would have come to you?
A Come to me and I would have to fire him, yes.

Read in context, the trial court had the right to treat the testimony as the denial that PAMCO had any authority to itself hire or fire the plaintiff. The emphasis upon "I" in the answer is just as possible as upon "have" because consistent with the denial of the previous answer. The court had a right to believe and expressly found that RS&G retained the right to hire and fire its drivers, including the plaintiff. Such a retention was consistent with the entrustment of a valuable instrumentality to the plaintiff and continued payment of wages to the plaintiff and the continued responsibility retained by RS&G to service, care for, repair and protect its trucks. It is true that in *Olsen v. Veness, supra,* in which the court held that the borrowed servant was a loaned servant of the borrowing employer under an agreement in which the borrowing employer had exclusive control including the care of the rented truck involved, the formal right to discharge remaining with the lending employer was held to be not necessarily controlling. The court pointed out that if the borrowing employer had been dissatisfied with the loaned servant's services he could have effected his discharge or removal by complaint to the lending employer or by terminating the hire of both truck and driver; that the fact of discharge would originate with the dissatisfied hirer although the actual words might alone come from the original employer. However, the trial court here was at liberty under the evidence to make a contrary reasonable inference, which he did. There being substantial evidence to support the findings, we are bound thereby. *Nyman v. MacRae Bros. Constr. Co., supra; Davis v. Early Constr. Co., supra; Nepstad v. Lambert, supra.* See *Standard Oil Co. v. Anderson,* 212 U.S. 215, 53 L. Ed. 480, 29 S. Ct. 252 (1909).

Second. Defendants contend that defendants were not guilty of primary negligence. Briefly, the court found that prior to the date of the accident the defendant had driven rigid interlocking sheet piling along the sides of the ditch to support the sides of the ditch, the sheet piling extending from 1½ to 2 feet along the ground level. The sheet piling was strong and rigid enough to stop a truck if backed against it. It had been the custom of dump truck drivers, including the plaintiff, with no objection from anyone, after having been given the stop signal, to back against the sheet piling before dumping their loads. On the morning of the accident before backfilling operations commenced, PAMCO, in connection with its operations, had driven the sheet piling supporting the sides of the ditch down below ground level for a distance of about 15 feet. The approach to the ditch at that point was on a slight rise to a point 2 or 3 feet from the ditch and then there was a sharp decline to the edge of the ditch estimated to be as much as 30 degrees. That morning, plaintiff was making his first dump into the excavation. The defendant Hartley, who occasionally acted as signalman at the direction of the regular signalman, was told by the regular signalman to dump the next load at the point where the sheet piling was at or below ground level. Hartley first signaled by hand for the plaintiff, who was then located in the cab of his truck about 30 or 40 feet easterly of the excavation, to go ahead in an easterly direction, and then signaled by hand to the plaintiff to back his truck in a westerly direction toward the excavation as directed. As the truck approached the excavation, Hartley gave the plaintiff a signal to slow down as the driver approached the excavation. It was customary after such a signal for the driver to gradually back his truck against the sheet piling extending above the edge of the excavation. Plaintiff, following the instructions of the signalman, backed his truck towards the excavation in a slow, careful and prudent manner. The court found that the plaintiff did not observe the absence of the sheet piling, and would not, in the exercise of reasonable care, have ob-

served its absence; and, in reliance on the signal of the signalman, backed his truck to the edge of the excavation and into the excavation.

. . . Leslie B. Hartley gave Charles Pichler no notice that he was backing into an area where his truck would not be stopped by sheet piling. Charles Pichler backed the truck up to the sheet piling assuming, and he so had a right to assume, that the sheet piling extended above the ground as was customary in the general area.

The court further found that Hartley had a duty to warn the plaintiff

of the unique and dangerous condition existing at the time and place of the accident, but failed to warn plaintiff of this condition . . . and his failure to so-warn . . . was negligence, and said negligence was an approximate cause of the plaintiff's injury.

The evidence was in dispute on the findings assigned as error, but there is substantial evidence to support them. The court had the right to find and conclude that the failure of defendants to warn the plaintiff of the removal of the sheet piling was negligence. *Tipton v. Barge,* 243 F.2d 531 (4th Cir. 1957). See *Greenleaf v. Puget Sound Bridge & Dredging Co.,* 58 Wn.2d 647, 364 P.2d 796 (1961); Annot., 20 A.L.R.2d 868 (1951). The court also found that PAMCO could have reasonably protected trucks and drivers from backing into the excavation by placing a stop log at the point of danger. The court, however, did not consider whether testimony concerning this matter also established PAMCO's negligence. There being other evidence of negligence, we likewise make no determination on this point.

Third. Defendants contend that plaintiff was guilty of contributory negligence as a matter of law. The court found that the plaintiff did not know of the absence of the customary sheet piling at the edge of the ditch before he started to back up and while he was doing so; that while plaintiff was backing his truck and watching the signalman Hartley with the use of the side mirror on the truck, a customary practice, he could not see the edge of the ditch towards which he was being directed. The plain-

tiff had testified in substance that he could not see the absence of the sheet piling in his side mirror because he was too short. The court further found that plaintiff was operating under the direction of the signalman who was guiding him and who had the duty to warn the plaintiff of any extraordinary condition which constituted a hazard. It is not contributory negligence as a matter of law for a truck driver, who is unable to see the dangerous condition of the premises into which he is backing his truck, to proceed upon the assumption that the signalman upon whom he is relying and who has the duty of directing him will discharge his duty, including the giving of appropriate warning of danger. Whether or not plaintiff was warned is relevant on the issue of contributory negligence. *Nelson v. Bjelland,* 1 Wn.2d 268, 95 P.2d 784, 125 A.L.R. 641 (1939). Whether under the circumstances plaintiff knew, or in the exercise of reasonable care for his own safety should have known the danger, is a matter of fact. *Tipton v. Barge, supra.* See *Tyler v. F. W. Woolworth Co.,* 181 Wash. 125, 41 P.2d 1093 (1935); 38 Am. Jur. *Negligence* §§ 23, 24 (1963) and *McCully v. Fuller Brush Co.,* 68 Wn.2d 675, 679-680, 415 P.2d 7 (1966).

Fourth. Defendants contend that the trial court erred in delaying the entry of findings, conclusions and judgment for over a year after the case was submitted for decision below. Defendants claim prejudice contending that by that time remembrance of the evidence and arguments would not be clear and correct. Presentation of the testimony below was concluded on March 15, 1966, whereupon the court took the matter under advisement. On June 30, 1966, the trial judge wrote counsel for the respective parties stating that he was awaiting the decision of the Supreme Court in *Nyman v. MacRae Bros. Constr. Co.,* 69 Wn.2d 285, 418 P.2d 253 (1966) theretofore argued, with the decision due at any time, because the loaned servant issue there involved might be determinative of the similar issue here involved. He requested that if either counsel did not agree to the proposed procedure, to so advise him. No

objection was made. Upon the *Nyman* case being decided by the Supreme Court, defendants' counsel mailed the trial court a copy of the opinion. Defendants' counsel made no motion for reargument at that time. The court then rendered a memorandum opinion which, among other things, discussed the *Nyman* case. Defendants then made a motion for reconsideration, the motion not specifically assigning delay as a basis for relief. The motion was denied. Thereafter, findings, conclusions and judgment were entered by the trial court from which defendants appeal. The contention now advanced is advanced for the first time on this appeal. In our opinion, the objection is not well taken. Reasonable delay to await the disposition of a pending appeal involving what may be a controlling point of law is not unusual and may very well be in the best interests of the parties and in the interest of the proper administration of justice. If there is need for an earlier decision the trial court should be so advised and given an opportunity to pass upon the matter. Here, there was no objection to the procedure undertaken. By not objecting, the parties took the risk that the disposition of the appeal might be delayed and the decision of the case below unavoidably deferred. We are of the opinion that no error was committed, but if there was error, it was waived.

The judgment is affirmed.

FARRIS and STAFFORD, JJ., concur.