[No. 1237-1.    Division One—Panel 2.    October 24, 1972.]

ERICKSON PAVING Co., *Respondent,* v. YARDLEY DRILLING Co., *Appellant.*

*Malott & Southwell* and *Thomas Malott,* for appellant.

*Short, Cressman & Cable* and *Edward R. Langenback, Jr.,* for respondent.

SWANSON, J.—Erickson Paving Co., hereinafter referred to as "Erickson," was a prime contractor, and Yardley Drilling Co., hereinafter referred to as "Yardley," was its subcontractor, on a road building project in Stevens Pass. Yardley was hired to do blasting and drilling on the project.

On the morning of August 9, 1968, when the blast in question occurred, Erickson's superintendent, Cal Coie, alerted drivers of D-8 and D-9 tractors working below the blast area to move out of the way. Superintendent Coie told Yardley employee Frank Fosterling, a signal man for the blast, not to give word for the blast until the D-8 tractor had moved to a safe location. Coie did not wait to see where the tractor went; Fosterling gave the order, and the blast occurred damaging the D-8 tractor which had not cleared the danger area.

The trial court sitting without a jury awarded damages to Erickson for the cost of repairing the damaged tractor, together with interest, loss of use, and reasonable attorneys' fees. The trial court predicated liability on two grounds—first, that the type of blasting involved was a dangerous instrumentality making Yardley strictly liable

for any damages to Erickson proximately caused by the blast; and, second, that under the indemnity clause of the subcontract Yardley is liable to Erickson for any damages proximately caused by the blast.

Yardley appeals and first assigns error to the trial court's conclusion of law that

> The type of blasting carried on in the instant case was a dangerous instrumentality, and defendant is strictly liable for the damage to plaintiff proximately caused by the blast as set forth in paragraph 3 of these Conclusions of Law.

Conclusion of law No. 2. Blasting is generally considered an abnormally dangerous activity justifying the application of the doctrine of strict liability. *See* W. Prosser, *Torts* § 78 (4th ed. 1971); *Foster v. Preston Mill Co.*, 44 Wn.2d 440, 268 P.2d 645 (1954). In applying that doctrine to the blasting operation in this case, the trial court had to determine that Yardley controlled the dangerous blasting activity, that Erickson was a member of the class threatened by the danger, and, of course, that the activity actually caused the injuries. The trial court found these criteria satisfied by the evidence, and its factual determinations support its conclusion that strict liability ought to be imposed against Yardley.

Appellant Yardley argues that the doctrine of strict liability without fault should not be applied in favor of those, such as Erickson, who voluntarily remain on the premises where blasting occurs, but should be limited to those off of the premises, directing our attention to *E. I. Du Pont De Nemours & Co. v. Cudd*, 176 F.2d 855 (10th Cir. 1949); *Smith v. Day*, 100 F. 244 (9th Cir. 1900), and *Hobbs v. Martin Marietta Co.*, 131 N.W.2d 772 (Iowa 1964). These cases are inapposite. The *Smith* case did not involve strict liability but, rather, was decided on the basis of assumption of risk, and *E. I. Du Pont De Nemours* and *Hobbs* both held that the doctrine of strict liability may not be applied in favor of an employee participating in the blasting operation.

This is not the situation here. Although he did cooperate with Yardley, Erickson was not Yardley's employee and was not a participant in the blasting operation; moreover, we are not persuaded that strict liability should be limited to the protection of third-party plaintiffs located on adjoining land. We hold that in the absence of assumption of the risk or participation in a dangerous activity by a plaintiff injured by such activity, the doctrine of strict liability is available to provide a remedy to such a plaintiff if he is otherwise entitled to it, regardless of whether he is located on the land where the activity takes place or on adjoining property. *See Moore, Kelly & Reddish, Inc. v. Shannondale, Inc.*, 165 S.E.2d 113 (W. Va. 1968).

Yardley next assigns error to the primary basis for the trial court's determination of liability; namely, the indemnity clause in the subcontract between Erickson and Yardley. This clause provided that Yardley agreed to

indemnify and save harmless the contractor [Erickson] from and against any and all . . . losses . . . of whatsoever kind or nature, including attorney's fees, arising out of, in connection with, or incident to the subcontractor's [Yardley's] performance of this subcontract.

Yardley argues that this indemnity agreement was intended to apply only to claims of third parties and was not designed to cover any claim of damage by Erickson against its subcontractor Yardley. In determining the application of this agreement, the trial court properly considered the meaning of "indemnify." The trial judge said:

The first word that I am concerned with is the word, ["]indemnity,["] and I have the dictionary here. This is Webster's Collegiate dictionary. It is an old one, 1956. The word ["]indemnify["] says that, ["]to secure against loss or damage, to make restitution or compensation to; and reimburse; also to make good a loss.["] Now, anyone reading this who knows no more about the law than I do, it seems clear to me that this is an absolute agreement obsolutely to pay for any damage that was the result of the work of the subcontractor. Whether the subcontractor was negligent or not seems to me is

immaterial, or whether the contractor was negligent or not seems to me immaterial.

■ We agree. Contrary to Yardley's contention, a reading of the indemnity provision for its plain meaning discloses no language limiting its application to third-party claims, nor does our research indicate that such a provision should be so limited. *See generally* 20A *Words and Phrases, "Indemnify"* (1959); *Bouvier's Law Dictionary* 1532 (8th ed. 1914). Authority cited by appellant Yardley supports the proposition that an indemnity clause will not be enforced against an indemnitor in favor of an indemnitee injured solely by his own negligence or default. RCW 4.24.115; *Tyee Constr. Co. v. Pacific Northwest Bell Tel. Co.,* 3 Wn. App. 37, 472 P.2d 411 (1970). Although indemnity clauses in construction contracts are to be strictly construed against the indemnitee, such clauses will be enforced where their meaning is clear. *Cope v. J. K. Campbell & Assoc.,* 71 Wn.2d 453, 429 P.2d 124 (1967); *Continental Cas. Co. v. Municipality of Metro. Seattle,* 66 Wn.2d 831, 405 P.2d 581 (1965); *Tyee Constr. Co. v. Pacific Northwest Bell Tel. Co., supra; Northern Pac. Ry. v. National Cyl. Gas Div.,* 2 Wn. App. 338, 467 P.2d 884 (1970). *See also* Annot., 143 A.L.R. 312 (1943). The instant case does not involve an injury resulting from the *sole negligence* of the indemnitee Erickson, and the plain meaning of the indemnity clause in the contract between the parties indicates that Yardley, as indemnitor, is to take responsibility for *all* losses arising out of the blasting operations being performed by Yardley. The trial court was correct in holding that under the indemnity clause Yardley is responsible to Erickson for the damage caused to Erickson's tractor.

Appellant Yardley also challenges the trial court's conclusion that Yardley's employee Frank Fosterling, who gave the signal for the blast, was not Erickson's borrowed servant. Yardley contends that at the moment Erickson's superintendent Coie told Fosterling to fire the blast when the tractor was clear, he made Fosterling his borrowed servant, so that the only negligent actors were Fosterling

and Coie, both agents of Erickson. Moreover, Yardley argues that if Fosterling was Erickson's loaned servant, the negligence was that of Erickson alone, and consequently, the indemnity agreement between the parties was made invalid by the terms of RCW 4.24.115 which voids any contract which purports to indemnify against liability for damages arising from the sole negligence of the indemnitee.

■ Appellant's argument is without merit. The question of whether or not Fosterling was the borrowed servant of Erickson is one for the trier of fact, and the criteria for making that determination have been clearly established and need not be reviewed here. *See Pichler v. Pacific Mech. Const'rs,* 1 Wn. App. 447, 462 P.2d 960 (1969); *Anderson v. Red & White Constr. Co.,* 4 Wn. App. 534, 483 P.2d 124 (1971); *Clarke v. Bohemian Breweries, Inc.,* 7 Wn.2d 487, 110 P.2d 197 (1941). *See also* 1 Restatement (Second) of Agency § 227, comment *b* at 501 (1958). These authorities indicate that it is a factual question whether the evidence, and reasonable inferences therefrom, show a relationship of subordination or merely one of cooperation. A review of the record in the case at bar reveals that it is doubtful that superintendent Coie did more than to make a suggestion to Fosterling and, even if some partial control was exercised by Coie, it was not sufficient to compel the conclusion that Fosterling was the borrowed servant of Erickson. In short, substantial evidence supports the trial court's determination that Fosterling was not a borrowed servant.

■ Finally, Yardley objects to the award to Erickson of prejudgment interest running from the date Erickson became responsible for the payment of repair costs. He argues that the claim was unliquidated and therefore the award of interest was improper. In *Prier v. Refrigeration Eng'r Co.,* 74 Wn.2d 25, 442 P.2d 621 (1968), the court awarded the plaintiff interest on the cost of certain specific repairs it had made to an ice rink from the date the repairs were made. The court observed that evidence was available after the repairs were made which permitted the computation of

the cost of the repairs with exactness and without reliance upon opinion or discretion. The court said at page 32:

> The rule in Washington is that interest prior to judgment is allowable (1) when an amount claimed is "liquidated" or (2) when the amount of an "unliquidated" claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion. *See, Mall Tool Co. v. Far West Equip. Co.,* 45 Wn.2d 158, 273 P.2d 652 (1954); *Valley Land Office, Inc. v. O'Grady,* 72 Wn.2d 247, 432 P.2d 850 (1967). Professor McCormick has defined a "liquidated" claim as one where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion.

*See also Kelly v. Schorzman,* 3 Wn. App. 908, 478 P.2d 769 (1970). The evidence presented by Erickson made it possible to compute the amount of damages without reference to opinion evidence. It is also significant that, as in *Prier,* defense counsel stipulated as to the amount of damages. We conclude that the trial court properly applied the rule in *Prier* in awarding prejudgment interest.

We note that Yardley assigns error to the award of attorneys' fees but not to the reasonableness thereof, but this claim or contention rests upon the validity of the indemnity agreement. Because we have determined the agreement valid and applicable in this case, the award of attorneys' fees also was proper.

The judgment is affirmed.

FARRIS, A.C.J., and JAMES, J., concur.