[No. 39228.    Department Two.    July 25, 1968.]

JAMES S. ACKERMAN, *Appellant*, v. EDWARD TERPSMA *et al.,*
*Respondents.*\*

*Joseph T. Pemberton* and *Jacob L. Smith,* for appellant.

*Russell Millhouse,* for respondents.

NEILL, J.—Plaintiff[1] brings an action for personal injuries
suffered in an automobile accident in which the defendant
was driving his own vehicle and plaintiff was a passenger.
Plaintiff alleges that defendant was negligent (1) in fail-

\*Reported in 445 P.2d 19.

---

[1] James S. Ackerman is a minor and sues through his guardian ad
litem, but we will refer to him herein as the plaintiff.

ing to use reasonable care in the operation of his automobile and (2) in operating a vehicle with defective equipment.

Defendant, being in need of a new septic tank at his suburban residence, called the owner of Valley Contractors to do the excavating for him on a Saturday. Valley Contractors sent plaintiff, one of its employees, with a "backhoe" to defendant's premises. Plaintiff had spent the morning on another job and about noon drove the backhoe from the other jobsite to defendant's project where he commenced the excavation. About 4 p.m., plaintiff advised defendant he was quitting for the day (the project was not complete) and asked to use defendant's telephone to call for transportation back to his employer's place of business. There is a dispute as to whether plaintiff then asked defendant for a ride into town or whether defendant offered the ride. In either event, defendant drove plaintiff to town, but on the way he failed to negotiate a right angle turn and struck a utility pole, injuring plaintiff.

Plaintiff appeals from an adverse jury verdict and judgment, contending that the court erred in (1) instructing the jury on the host-guest statute (RCW 46.08.080); (2) instructing that, as a matter of law, plaintiff was a guest in the automobile operated by defendant; (3) instructing on "unavoidable accident;" (4) failing to give plaintiff's requested instruction No. 16;[2] and (5) failing to give plaintiff's requested instruction No. 12.[3]

---

[2]Plaintiff's requested instruction No. 16:

"You are instructed that the right to control the method of doing the work is the principal consideration in determining whether one employed is a servant or an independent contractor employee. If you decide that the defendant had the principal right of control over the plaintiff in his work and as to the details of performing it, then you must conclude that the plaintiff was an employee of the defendant; and on the other hand, if you conclude that the contractor had the principal right of control over the defendant as to the terms of the work, you must conclude that the defendant was an employee of the contractor only."

[3]Plaintiff's requested instruction No. 12:

"You are instructed that when you have a ·set of facts where

Further facts which were elicited at trial were: Defendant had not hired plaintiff personally. Rather, defendant dealt solely with plaintiff's employer, Valley Contractors, who assigned plaintiff to do the excavation work on defendant's property. Defendant paid Valley Contractors for all work done by plaintiff, and in turn Valley Contractors paid all of plaintiff's wages. Although defendant showed plaintiff where the excavation work was to be done and also worked on various portions of the excavation work while plaintiff was operating the backhoe, defendant did not attempt to tell plaintiff how to operate the machine or how to excavate. While testifying at trial, plaintiff referred to Valley Contractors as his "boss." The evidence also established that plaintiff set his own working hours, quitting early without consulting with or requesting permission from defendant. Similarly, defendant testified that, although he was annoyed with plaintiff's quitting early without finishing the work, he believed that "it was his [plaintiff's] decision, he was his own boss, so I had nothing to say about it."

Approximately 2 weeks prior to the accident, defendant became aware that the brakes in his automobile were sometimes "soft" and occasionally required "pumping." It was further established that (1) while not operating perfectly, the brakes did perform efficiently prior to the accident; (2) earlier in the day plaintiff had driven the automobile to Everson for some pipe fittings needed to repair damage caused when the backhoe snagged a waterline; (3) that

---

"(1) The owner of real property is hiring a contractor with employees to do work upon the owner's property; and

"(2) The owner has an automobile in which he takes the employee of the contractor to the automobile or to the employee's home, you are instructed that in transporting said employee, the owner must exercise ordinary care in the operation of the automobile and must furnish an automobile for the purpose in a reasonably safe operating condition.

"If you find in this case from a fair preponderance of the evidence, that the defendant did not provide a reasonably safe vehicle and did not operate the same in a reasonably safe and prudent manner, and that such failure constituted negligence proximately causing injuries to the plaintiff, your verdict shall be for the plaintiff."

plaintiff had no difficulty with the automobile other than "pumping" the brakes on occasion; (4) defendant failed to negotiate the turn because the brake pedal jammed in an upright position and would not depress; and (5) this latter defect was not known to defendant prior to the accident.

Turning now to the assignments of error, plaintiff argues that under the loaned servant doctrine as expressed in *Nyman v. MacRae Bros. Constr. Co.*, 69 Wn.2d 285, 418 P.2d 253 (1966), he was a servant of defendant either as a matter of law, or at least as a question of fact for the jury. In *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 257, 386 P.2d 958 (1963), we quoted the following general rule from *Macale v. Lynch*, 110 Wash. 444, 448, 188 Pac. 517 (1920):

> ". . . It is, of course, well settled law that one who is in the general employ and pay of one person may be loaned, or hired, by his employer to another, and when he undertakes to do the work of the other he becomes the servant of such other, to perform the particular transaction. *Standard Oil Co. v. Anderson*, 121 U.S. 480; *Olsen v. Veness*, 105 Wash. 599, 178 Pac. 822. The controlling facts in these cases, and in all others which support the rule, is *that the servant must have been in the exclusive control of the one to whom he is loaned*, and if so such servant becomes, *pro hac vice*, the servant of him to whom the exclusive control so passes, and not otherwise. . . ." (Italics ours.)

As we have already indicated, in the instant case the evidence establishes that defendant exercised no control over plaintiff or his operation of the backhoe other than to show plaintiff where the excavation work was to be done. Restatement (Second) of Agency § 227 (1958), relied upon by *Davis, supra*, precisely describes in Illustration 2 the situation in the case at bar:

> P, a master plumber, sends one of his journeymen to make such repairs upon B's premises as B shall point out, B to pay P at the rate of three dollars per hour for the journeyman's time. In making repairs upon the plumbing, the journeyman is acting as P's servant.

In *Nyman, supra*, at 288, relied on by plaintiff, we held:

Normally, the question of whether or not a particular individual was a "loaned servant" is a factual one, to be determined by the jury. Restatement (Second) Agency § 227 (1958). We have previously held, under similar circumstances, that it was reversible error for the trial court to rule as a matter of law on the factual issue of whether or not a defendant was a "loaned servant" where there is substantial evidence in the record upon which reasonable minds could differ. *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 386 P.2d 958 (1963). . . .

. . . It is admittedly true that a continuance of the general employment is generally indicated where, as here, the rented instrumentality is of considerable value, and where the general employer would expect the employee to protect his interests in the use of the instrumentality as opposed to any conflicting interest on the part of the temporary employer. Restatement (Second), Agency § 227 Comment C, p. 501 (1958). But we think there is substantial evidence in the record to warrant the jury's conclusion that Seaborn Pile Driving Company had the right to control, and was controlling, the defendant Bickler's actions at the time of the incident involved.

After reviewing the record in the instant case, we are convinced that there was no substantial evidence that would warrant a jury's conclusion that defendant was exercising that degree of control necessary to make plaintiff his servant.

■ With respect to plaintiff's assignment of error to the ruling of the trial court that as a matter of law plaintiff was a guest in defendant's automobile at the time of the accident, our holding in *Taylor v. Taug*, 17 Wn.2d 533, 537, 136 P.2d 176 (1943), is particularly appropriate:

The relationship of host and guest in its inception carries with it the concept of a gratuitous offer of service by a host, or a request for service on the part of a guest and an acceptance, followed by an overt act. While it cannot be held that the relationship is founded upon contract, still in its very nature it must be based upon a meeting of the minds of the host and the intended guest, followed by an act which manifests an intent to proceed with the journey.

Similarly, our holding in *Woolery v. Shearer*, 53 Wn.2d 156, 159, 332 P.2d 236 (1958), is relevant to the case at bar:

The mere hope of obtaining a benefit, uncommunicated to the passenger, is not a sufficient basis on which to predicate an expectation of such a benefit. . . .

. . . .

. . . While a legally enforcible contract is not necessary, there must be some understanding on which an *expectation* of benefit can be based.

Plaintiff argues that whether he promoted or defendant suggested the ride was a disputed question of fact. Thus, plaintiff contends that the jury could have found that the ride to plaintiff's car or to Valley Contractors' office after work was of potential benefit to defendant in that such a ride promoted the good will of this employer-employee relationship not yet terminated. Plaintiff relies upon *Peterson v. Thorvaldsen*, 45 Wn.2d 376, 274 P.2d 844 (1954); and *Woodland v. Smith*, 56 Wn.2d 552, 354 P.2d 391 (1960), in which we held that the factual requirements necessary to constitute payment for transportation and thus to avoid the burden of the host-guest statute include: (1) actual or potential benefit in a material or business sense resulting or to result to the owner or operator of the automobile; (2) that the transportation be motivated by the expectation of such benefit; and (3) that the presence of the occupant directly compensates the operator or owner in a substantial and material or business sense, though not necessarily with money, as distinguished from mere social benefit or nominal or incidental contribution to expenses.

Even if we accept plaintiff's testimony that defendant suggested or promoted the ride, the record is utterly devoid of evidence establishing any thought, discussion or understanding of actual or potential benefit to defendant in a "material or business sense" or that any such benefit was the motivating factor behind the ride. Rather, the uncontradicted testimony establishes that no prior arrangement had been made by defendant with either plaintiff or his employer, Valley Contractors, as to the transportation of plaintiff; that defendant gave plaintiff a ride merely as a

favor, expecting no particular benefit in return; and that plaintiff did not offer defendant compensation in any form. To allow a jury to find, as proposed by plaintiff, that defendant's giving plaintiff a ride was "in the mutual interest of both parties" and promoted "a tangible business benefit of defendant" and to further find that such potential benefit motivated, even partially, defendant's decision to give plaintiff a ride, would be to permit an exercise in speculation unsupported by even a scintilla of evidence.

■ Plaintiff's assignment of error to the trial court's giving the "unavoidable accident" instruction is, he contends, supported by *Cooper v. Pay-N-Save Drugs, Inc.*, 59 Wn.2d 829, 835, 371 P.2d 43 (1962), wherein we stated:

> Running as a thread through most of our former decisions that we have reviewed, is the thought, stated affirmatively, that it is proper to give the instruction if there is affirmative evidence that an unavoidable accident occurred; stated negatively, it is error to give the instruction if there is no evidence of an unavoidable accident or if the only issue possible under the facts is that of negligence and contributory negligence.

Plaintiff argues that there was no evidence indicating that the accident was unavoidable and further that defendant's knowledge of the defective condition of his autobile brakes negates any theory of unavoidable accident based on a latent defect.

Conversely, defendant contends that there was sufficient affirmative evidence for the jury to find that the accident was unavoidable since there was evidence that the accident was caused by a latent defect and not by anyone's negligence. We agree with defendant's view of the evidence presented and therefore conclude that the trial court properly gave the unavoidable accident instruction.

The refusal to give the two requested instructions was proper.

Judgment is affirmed.

HUNTER, J., concurs.

FINLEY, C. J. (concurring)—I am in substantial agreement with the views expressed, and concur in the majority's disposition of this appeal on the grounds that the host-guest statute applies and is a bar to plaintiff's action for personal injuries. However, perhaps gratuitously, I wish to add that I have serious doubts as to the propriety of the instruction on "unavoidable accident" given to the jury by the trial court.

Apparently, unavoidable accident instructions are permissible under proper circumstances in most jurisdictions in the United States, and have been for a long time. *See* Annot., 65 A.L.R.2d 12 (1959). Yet, despite their longevity, there are several reasons why the giving of such instructions should be reevaluated and, in my judgment, discontinued. Such instructions are at best superfluous; usual negligence and contributory negligence instructions are sufficient. Unavoidable accident instructions may well create impressions in jurors' minds that an additional burden is imposed upon plaintiffs to prove affirmatively that accidents were avoidable. Finally, there is considerable likelihood such instructions will becloud issues and confuse and mislead jurors.

There is some suggestion in our opinions that this court has already indicated its disapproval of unavoidable accident instructions. As early as 1942, in *Brewer v. Berner,* 15 Wn.2d 644, 131 P.2d 940 (1942), in which this court first articulated our present rule regulating use of unavoidable accident instructions,[4] we disapproved of the use of such instructions unless it is clear that a jury has substantial evidence before it supporting a conclusion of unavoidability. In *Cooper v. Pay-N-Save Drugs, Inc.,* 59 Wn.2d 829, 835, 371 P.2d 43, 47 (1962), this court stated that "it would appear better practice to omit . . . [giving an unavoidable accident instruction] except in those instances in which, quite plainly, it is peculiarly appropriate."

---

"". . . [A]n instruction on unavoidable accident is only authorized when the evidence shows or justifies an inference that an unavoidable accident has occurred as that term has been defined." 15 Wn.2d at 650, 131 P.2d at 943.

Although this court has, on at least two occasions, reversed judgments because it was error to give unavoidable accident instructions,[5] it has never reversed a trial court for refusing to give a requested instruction on unavoidable accident. *Cooper v. Pay-N-Save, supra.* It is for this reason that the committee established by the Supreme Court for promulgation of civil jury instructions has recommended that no instruction on unavoidable accident be given. *See* WPI 12.03.

In 1958, the California Supreme Court overruled a prior decision upholding unavoidable accident instructions, and held that such instructions were thereafter expressly disapproved. *Butigan v. Yellow Cab Co.,* 49 Cal. 2d 652, 320 P.2d 500 (1958). The *Butigan* decision signaled the beginning of what has now become a decisive trend throughout the United States.[6] In my judgment, this trend is a healthy one. I think the court should continue the trend, and thereby assure good riddance of a quite dubious anachronism in Washington decisional law.

WARD, J. Pro Tem., concurs with FINLEY, C. J.

———

October 10, 1968. Petition for rehearing denied.

———

[5]*Pakka v. Fitzpatrick,* 53 Wn.2d 356, 333 P.2d 917 (1959); *Brewer v. Berner, supra.* In *Van Ry v. Montgomery,* 58 Wn.2d 46, 360 P.2d 573 (1961), this court affirmed a trial court order granting the plaintiff a new trial because of erroneously giving an unavoidable accident instruction.

[6]*See, e.g., Alaska Brick Co. v. McCoy,* 400 P.2d 454 (Alaska 1965); *Phoenix v. Camfield,* 97 Ariz. 316, 400 P.2d 115 (1965); *Lewis v. Buckskin Joe's, Inc.,* 156 Colo. 46, 396 P.2d 933 (1964); *Miller v. Alvey,* 246 Ind. 560, 207 N.E.2d 633 (1965); *Graham v. Rolandson,* 150 Mont. 270, 435 P.2d 263 (1967); *Vespe v. DiMarco,* 43 N.J. 430, 204 A.2d 874 (1964); *Fenton v. Aleshire,* 238 Ore. 24, 393 P.2d 217 (1964); *Camaras v. Moran,* 219 A.2d 487 (R.I. 1966).