[No. 465-41358-1. Division One—Panel 2. March 22, 1971.]

MICHAEL ANDERSON, *Respondent,* v. RED & WHITE CONSTRUCTION COMPANY et al., *Appellants.*

*Wolf, Wilkins & Hackett, Martin L. Wolf,* and *George W. Wilkins,* for appellants.

*Burns & Schneiderman* and *James D. Burns,* for respondent.

SWANSON, J.—Michael Anderson was nearly electrocuted when the defendant Red & White Construction Company's ("Red & White") mobile crane struck a 12,500-volt power line while he was attempting to unhook the crane's hoist. A King County jury awarded the plaintiff damages of $97,600. The defendant Red & White, owner of the crane, and an additional defendant, Ellis Lewellen, operator of the crane, appeal.

The salient facts are these:

Plaintiff Michael Anderson was a laborer employed by

Lee Turzillo Contracting Company ("Turzillo"). Turzillo was a subcontractor to Century Construction Company ("Century") to perform certain footing and foundation work in the city of Renton. Turzillo rented a crane furnished with an operator and an oiler from defendant Red & White for a cost of $27 per hour. Defendant Lewellen, the operator sent to Turzillo with the crane by Red & White, proceeded pursuant to directions from Turzillo, to hoist a cement mixer from one position to another. Anderson was unhooking a chain attached to the mixer when the crane's hoist contacted an overhead power line. As Lewellen testified, "A There was a blue flash. Q And Mike was hit? A Yes." Anderson sued both Red & White and Lewellen to recover damages for his injuries. He alleged that Lewellen was negligent in operating and maintaining the crane and in violating safety standards prescribed by RCW 49.16.050.[1] Lewellen's negligence, Anderson said, was a proximate cause of the accident. Anderson then asserted that Lewellen was Red & White's employee so that Red & White was liable on the doctrine of respondeat superior.[2] Plaintiff Anderson also claimed Red & White itself was negligent,

[1]RCW 49.16.050 provides in part: "For all other work than coal mining, the director of labor and industries through the division of safety, . . . shall make, and may from time to time modify, and shall promulgate standards of safety, to wit:

"(1) To make safe the place of work of workmen, same to be termed 'safe place standards';

". . .

"The director of labor and industries through the division of safety, shall make, and may from time to time modify, and shall promulgate rules and regulations for the enforcement of the use of such standards of safety."

[2]Anderson's original complaint was against Red & White, Lewellen, Century, and Puget Sound Power & Light Co. ("Puget Sound"). Century brought in Turzillo as a third party defendant. Red & White cross claimed for judgment indemnifying it against Turzillo and Puget Sound. Prior to trial, actions by and against Century were dismissed as was the cross claim against Puget Sound. Red & White's cross claim for indemnity against Turzillo was ordered severed for trial following completion of Anderson's action against Red & White and Lewellen, and has not yet been tried. A voluntary nonsuit was granted dismissing Puget Sound from the action.

independent of Lewellen's acts, because of its violation of safety standards prescribed by RCW 49.16.050—failure to post a warning sign on the crane.

Defendants Red & White and Lewellen denied plaintiff's claims of negligence and advanced the affirmative defense that Anderson was contributorially negligent in failing to look out for his own safety, and said his negligence was a proximate cause of his own injuries. Defendants further claimed that Lewellen was a loaned servant of Turzillo so that Anderson was barred by the Industrial Insurance Act (RCW 51.24.010) from suing his fellow servant Lewellen or Red & White on an agency theory.

■ Appellants first assign error to the admission into evidence of the Department of Labor and Industries' Safety Standards for Construction Work without instructing the jury as to their applicability to Turzillo rather than to Red & White. Appellants assert that as long as there was a question of whether or not Turzillo was the employer and responsible for the operation of the equipment, the safety standards should not have been admitted without direction as to their applicability to Turzillo. Turzillo, appellants contend, had the duty to conform to the standards, and not Red & White. In making this argument, Red & White assumes that the applicability of safety standard section A-31-4[3] turns on who had control of the crane's operation. Their assumption ignores the safety standard section which places a duty to conform on *each owner* as well as on an agent or employer responsible for the operation of the crane. The owner of the crane, Red & White, had a duty to post a durable warning sign on the crane, even though Turzillo may also have had a duty to conform to this safety

---

[3]Section A-31-4 of the Safety Standards for Construction Work requires that each owner, agent or employer responsible for the operation of equipment shall post at the controls of each crane a warning sign reading, "It is unlawful to operate this equipment within 10 ft. of electrical conductors." This provision of the safety standards was issued pursuant to direction contained in RCW 49.16.050 which requires the director of labor and industries to promulgate standards of safety. (It was stipulated that these standards applied and had the force of law.)

standard. However, neither party proposed an instruction making both Red & White and Turzillo responsible for compliance.[4] Appellants' proposed instruction 3 made it Turzillo's responsibility only. It is not error to refuse an instruction incorrect in any particular. *See Robillard v. Selah-Moxee Irr. Dist.*, 54 Wn.2d 582, 343 P.2d 565 (1959).

■ Secondly, appellants claim that the trial court should have directed a verdict that respondent Anderson was contributorially negligent as a matter of law. This contention is without merit. A question of fact exists for the jury if different results might be honestly reached by different minds. *McQuillan v. Seattle*, 10 Wash. 464, 38 P. 1119 (1895); *Johnson v. Associated Sand & Gravel Co.*, 71 Wn.2d 738, 430 P.2d 944 (1967). There was conflicting testimony as to whether or not Anderson knew that the power lines were above him requiring him to appreciate his danger and whether or not Anderson signalled the crane operator, as Lewellen testified, to move the crane closer to the power line. Thus, the issue as to whether or not Anderson was contributorially negligent is a question of fact, not law.

■■ In their second assignment of error, appellants complain that the defense of contributory negligence was not included in other instructions which dealt with their negligence. Appellants are not entitled to have the defense of contributory negligence included as a qualification in every instruction involving their alleged negligence. All the instructions must be read as a whole. *State v. Swartos*, 65 Wn.2d 335, 396 P.2d 971 (1964); *Bingisser v. English*, 1 Wn. App. 436, 462 P.2d 945 (1969). It is discretionary with the trial court as to how many instructions are necessary to present fairly each litigant's theory. *Dabroe v. Rhodes Co.*, 64 Wn.2d 431, 392 P.2d 317 (1964).

Next, appellants contend that there was no evidence to support an instruction that Red & White was negligent

---

[4]For comment on the benefit of consolidating indemnity action with principal action (Red & White's indemnity action against Turzillo was severed prior to trial), see *Marsland v. Bullitt Co.*, 3 Wn. App. 286, 296, 474 P.2d 589 (1970).

as a matter of law for failing to post and maintain the warning sign required by the safety standards. This contention has no merit. It was stipulated that the safety standards promulgated pursuant to RCW 49.16.050 are a part of the administrative code and have the force of law. Further, respondent Anderson's evidence of Red & White's failure to post the required warning sign on the crane was not disputed. The jury was properly instructed to determine whether or not such negligence was a proximate cause of respondent's injuries.

Appellants claim in their fourth assignment that it was error not to allow the testimony of their witness James Parise. Parise's offer to testify as to what the foreman said in response to his statement that the power lines were "hot" was properly excluded as hearsay. Parise's offer to testify that Turzillo's foreman knew the power lines should be deactivated was only cumulative. The value of his testimony was questionable and the exclusion not prejudicial. Parise could not remember to whom he made his statement and whether he made it before or after the accident.

We turn now to the primary issue presented by this case—the familiar but persistent and troublesome problem of the loaned servant doctrine. First, the appellants claim that the trial court should have ruled as a matter of law that Lewellen was a loaned servant to Turzillo. This contention must be rejected. When there is conflicting evidence, as there is here, the question is one of fact to be decided by the trier of facts. *Ackerman v. Terpsma*, 74 Wn.2d 209, 445 P.2d 19 (1968); *Nyman v. MacRae Bros. Constr. Co.*, 69 Wn.2d 285, 418 P.2d 253 (1966); *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 386 P.2d 958 (1963). In discussing this issue in *Pichler v. Pacific Mech. Const'rs*, 1 Wn. App. 447, 462 P.2d 960 (1969), we said at page 450:

It is only if the evidence is undisputed that the nature of the relationship existing presents a question of law.

Secondly, appellants contend that the loaned servant doctrine was incorrectly defined in the court's instruc-

tions to the jury and, at best, confusing. Our Supreme Court, in *Ackerman v. Terpsma, supra* at 212, explained the doctrine by quoting with approval the general rule announced in *Macale v. Lynch,* 110 Wash. 444, 448, 188 P. 517 (1920):

> ". . . It is, of course, well settled law that one who is in the general employ and pay of one person may be loaned, or hired, by his employer to another, and when he undertakes to do the work of the other he becomes the servant of such other, to perform the particular transaction. [Citations omitted.] The controlling facts in these cases, and in all others which support the rule, is *that the servant must have been in the exclusive control of the one to whom he is loaned,* and if so such servant becomes, *pro hac vice,* the servant of him to whom the exclusive control so passes, and not otherwise. . . ." (Italics ours.)

The trial court used this language in instruction 7 to define the doctrine for the jury:

> You are instructed that a "loaned servant" is an employee of one employer whose exclusive control is transferred to another employer, so that the employee is considered to be an employee of the second employer as though there was a transfer of the employment relationship.

Appellants object to this instruction on the basis that it is misleading and argue that the trial court erred in refusing to qualify the term "employee" by the adjective "loaned" or "borrowed" whenever Lewellen's relationship with Red & White was contrasted with his relationship to Turzillo, so as to preclude the jury from thinking that Lewellen could not be an employee of Red & White and also an employee of Turzillo. While we do not specifically approve of this instruction as a model of clarity, we cannot say that it is either erroneous or so confusing as to prevent the appellants from arguing the doctrine to the jury. It does state that a loaned servant is an employee "considered to be an employee of the second employer" and not that Lewellen can only be the employee of one employer, as appellants

interpret the instruction. It correctly indicates that the transfer of exclusive control determines the change of relationship.

However, appellants raise a serious question of prejudicial error in their assignments of error as to instructions 4, 5, and 9. Appellants call our attention to this language in instruction 4:

> In addition, the defendants claim and plaintiff denies that the defendant Ellis A. Lewellen was a loaned employee or servant to the Lee Turzillo Contracting Company and by reason of this fact, he was an employee of the Turzillo Company *rather than of the Red & White Construction Co., Inc.*

(Italics ours.) Even though this instruction is only designed to outline the respective contentions of the parties, appellants took exception to this language and urged the court to consider "employee" in this context as a term of art which requires a qualifying adjective such as "loaned" or "borrowed." Appellants argue to us that the instruction is contradictory because they did not assert that general employment with Red & White had terminated, but only that Lewellen's services had been temporarily loaned or transferred to Turzillo. Appellants say the jury would have had to conclude from the clear implication of this instruction that since it was not disputed that Lewellen was and continued to be in the general employ of Red & White, he could not be an employee of Turzillo.

 Further, instruction 5, in outlining the burden of proof, told the jury:

> The defendants have the burden of proving the additional affirmative defense claimed by them: *That* the defendant Ellis A. *Lewellan* [sic] *was* . . . *not an employee of* defendant, *Red & White* Construction Co., Inc.

(Italics ours.) Even though the burden of proving the loaned servant relationship rests upon the person contending that it exists, this instruction places an improper burden on the appellants to prove a negative proposition which the law does not require them to do. This erroneous burden

was further emphasized in instruction 9, wherein the court used this language:

> With respect to defendants' affirmative defense that Ellis A. Lewellen was a "loaned servant" to the Lee Turzillo Contracting Company and *not* an employee of defendant Red and White Construction Co., Inc., . . .

(Italics ours.) Here the jury is again reminded that the appellants' affirmative defense involves finding Lewellen not to be an employee of Red & White. A review of *Nyman v. MacRae Bros. Constr. Co., supra,* is helpful in illustrating this error and its prejudicial effect. Plaintiff Nyman was an employee of Seaborn Pile Driving Co. ("Seaborn"). Seaborn had leased a crane from Mobile Crane Co. ("Mobile") on an hourly basis, together with an operator and an oiler. The crane operator, one Jack Bickler, negligently pulled the wrong lever when operating the crane, causing injuries to the plaintiff Nyman. Nyman sued the crane operator Bickler and Mobile on the theory that Bickler's negligence was a proximate cause of the accident and that Mobile was liable on a theory of respondeat superior, the same theory utilized by plaintiff Anderson in the case at bar. The only defense submitted to the jury related to whether or not the defendant operator was a loaned servant at the time of the accident. The court pointed out that Bickler could have been the servant of either his general master, Mobile, or of the borrowing master, Seaborn, or the servant of both companies. Bickler's status in *Nyman* is the same as is Lewellen's here. The court, in *Nyman,* 69 Wn.2d at 287, said this, in discussing Bickler's relationship with his general master and his borrowing master:

> Obviously, he [Bickler] remained the servant of the Mobile Crane Company in the sense that he was still in their employ. But the question remains as to whether Bickler, in performing certain functions with the crane for Seaborn Pile Driving Company, became the servant of that company to that limited extent. There can be no question that "[h]e may become the other's servant as to some acts and not as to others."

Just as Bickler remained the servant of Mobile in the sense

that he was still in their employ, Lewellen likewise remained the servant of Red & White in the sense that he was still in their employ, so that the factual question to be presented to the jury was whether Lewellen, in performing certain functions with the crane for Turzillo, became the servant of that company to that limited extent. As we stated in *Pichler,* the relationship of master and servant may exist between the borrowed servant and the borrowing master with respect to some acts and not as to others. The pleadings and the evidence raised the affirmative defense of whether or not Lewellen was a loaned servant at the time of the accident. As stated in *Cecchi v. Bosa,* 186 Wash. 205, 208, 57 P.2d 1064 (1936):

A party has the right to have every issue that is properly presented by the pleadings and evidence submitted to the jury in clear, concise and intelligible language, within the comprehension of persons who are ordinarily not educated in law.

Instructions 4, 5, and 9 failed to meet that requirement.[5]

---

[5]Although not necessary to the determination of this case, we desire to make clear our disapproval of instruction 8. It calls to the jury's attention various questions for its consideration in resolving the issue of whether or not Lewellen was Turzillo's loaned servant. The instruction does this without indicating the significance of the answers the jury might reach to such questions. In other words, the jury was not told what the effect would be of either an affirmative or a negative finding as to the various questions and factors posed. We believe this instruction is more confusing than enlightening. Perhaps the significance of the questions described in the instruction, and the answers a jury might reach, is entirely clear to persons trained in the law, but the law does not require the members of the jury to be lawyers.

Instruction 8 states:

No single fact is alone determinative of the question as to whether Ellis Lewellen had become a loaned servant of the Lee Turzillo Contracting Company. In deciding this question you may consider all of the evidence presented during the course of this trial. Your consideration may include, though it is not limited to, these factors:

Had Red & White Construction Co., Inc., resigned control of Ellis Lewellen to Lee Turzillo Contracting Company?

Whose equipment was being operated, and who was responsible for maintaining it?

The skill required in the operation of the equipment.

Who had the say as to the manner in which the crane should be

But is such error prejudicial, requiring a new trial? Respondent argues that it is not, since we do not know whether the jury found Red & White liable because of (1) its own negligence in failing to conform to the safety standards, or because of (2) Lewellen's negligence. From this argument respondent seems to contend that any error committed in instructing the jury on the loaned servant defense affected only Red & White's claimed liability based on Lewellen's negligence, leaving a separate basis of liability upon which to uphold the verdict—Red & White's own negligence in failing to conform to the safety standards. To reach this contention we must assume that the second basis of liability, Red & White's own negligence, is free from the effects of the erroneous instructions as to the loaned servant defense. But this is a false assumption. We do not know whether or not the jury, if properly instructed on the loaned servant defense, might have found Lewellen to be the loaned servant of Turzillo and that Lewellen's negligence was the *sole* cause of Anderson's injuries. If Lewellen were found to be Turzillo's loaned servant, Red & White would not be responsible for his negligence, and if Lewellen's negligence were determined to be the sole proximate

---

operated?

The length of time that Lewellen and the crane were to work for Lee Turzillo Contracting Company, and the method by which Red & White Construction Co., Inc. was to be paid for their services.

By whom was Ellis Lewellen paid, and who was responsible for withholding income tax, FICA contributions and Industrial Insurance premiums from his pay?

Who had the right to discharge Ellis A. Lewellen?

Who was responsible for the safe operation of the crane?

What type of work was the crane doing, and what were the sort of directions being given to Ellis Lewellen concerning performance of this work?

Whose business was being furthered by Ellis A. Lewellen?

What was agreed to between Red & White Construction Co., Inc. and Lee Turzillo Contracting Company and what was their intention, if any, concerning the employer-employee relationship which otherwise existed between Red & White Construction Co., Inc. and Ellis Lewellen.

cause of Anderson's injuries, such a finding would relieve Red & White of any responsibility. Inherent in such a determination would be the additional finding that Red & White's independent negligence in failing to post warning signs on the crane was not a proximate cause. Further, if Lewellen were determined to be Turzillo's loaned servant, respondent Anderson would be prevented by the Industrial Insurance Act from suing his fellow servant Lewellen.

■■■ The error created by the erroneous instructions as to the loaned servant defense permeated both theories of negligence. Since we cannot say that the result was not thereby affected, we must conclude that prejudicial error resulted requiring a new trial.

The judgment of the trial court is reversed and the case remanded for a new trial.

FARRIS, A.C.J., and JAMES, J., concur.

Petition for rehearing denied June 10, 1971.

Review granted by Supreme Court August 26, 1971.